# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOUREY NEWELL**, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**RISEUP FINANCIAL GROUP, LLC,**<br><br>Defendant. | Case No. 2:25-cv-01402-JFM<br><br>District Judge John F. Murphy |

## **DEFENDANT'S MOTION TO DISMISS**

Defendant RiseUp Financial Group, LLC ("RiseUp") respectfully moves this Court to dismiss Plaintiff Jourey Newell's ("Plaintiff") Class Action First Amended Complaint, ECF No. 19, pursuant to Federal Rule of Civil Procedure 12(b)(6) for the reasons set forth in the accompanying Memorandum of Law.

## **TABLE OF CONTENTS**

I.   INTRODUCTION ...............................................................................................................1

II.  PLAINTIFF'S ALLEGATIONS ........................................................................................2

III. LEGAL STANDARD .........................................................................................................3

IV.  PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF BECAUSE CELLULAR TELEPHONES ARE NOT RESIDENTIAL AND TEXT MESSAGES ARE NOT ACTIONABLE UNDER THE DNCR PROVISIONS. .................................................................................................4

   A. Plaintiff Is Not a "Residential Telephone Subscriber" Because the Term Properly Excludes Wireless Telephone Subscribers. ..................................................................4

      1. The Plain Meaning of "Residential Telephone Subscribers" Excludes Cellular Telephone Subscribers. ...........................................................................................4

      2. The Legislative History of the TCPA Confirms that Section 227(c) Was Intended to Apply to *Residential* Telephones, Not Cellular Telephones. ..............................7

      3. The FCC's Interpretation Is Incorrect and Does Not Bind This Court. .................8

   B. Plaintiff's FIRST AMENDED COMPLAINT Must Be Dismissed Because Text Messages Do Not Violate the DNCR Provisions and Plaintiff Only Alleges One Call. ......................................................................................................................10

V.   CONCLUSION .................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................4

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ..................................................................................................9

*Conn. Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) ..................................................................................................5

*Corner Post, Inc. v. Bd. Of Governors of Fed. Rsrv. Sys.*,
    603 U.S. 799 (2024) ...............................................................................................1, 8

*Estate of Cowart v. Nicklos Drilling Co.*,
    505 U.S. 467 (1992) ..................................................................................................5

*Hamdan v. Rumsfeld*,
    548 U.S. 557 (2006) .............................................................................................6, 10

*Honeycutt v. United States*,
    581 U.S. 443 (2017) .............................................................................................2, 10

*In re Ruels & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
    18 FCC Rcd. 14014 (2003)........................................................................................8

*In re Ruels & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
    30 FCC Rcd. 7961 (2015)........................................................................................10

*Ledbetter v. Goodyear Tire & Rubber Co.*,
    550 U.S. 618 (2007) ...............................................................................................1, 8

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ................................................................................. 2, 8, 9, 11

*McCarthy v. Bronson*,
    500 U.S. 136 (1991) ..................................................................................................5

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015) ........................................................................................ 2, 9, 11

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) ...............................................................................................4, 5

*Rubin v. United States*,
    449 U.S. 424(1981) ..................................................................................................5

*Shelton v. Fast Advance Funding, LLC*,
    378 F. Supp. 3d 356 (E.D. Pa. 2019)..............................................................5, 6, 10

*Wisc. Cent. Ltd. v. United States*,
    585 U.S. 274 (2018) ................................................................................................8

**Other Authorities**

147 Cong. Rec. S18781 (1991)..................................................................................6

149 Cong. Rec. S11967 (2003)............................................................................7, 10

47 C.F.R. § 64.1200(c)......................................................................................1, 9, 10

47 C.F.R. § 64.1200(c)(2). ..........................................................................................1, 4

47 C.F.R. § 64.1200(f)(15)........................................................................................9

47 U.S.C § 227(j)......................................................................................................6

47 U.S.C. § 227(a)(4)............................................................................................9, 10

47 U.S.C. § 227(b)(1)(A)(iii)....................................................................................6

47 U.S.C. § 227(c) ....................................................................................................1

47 U.S.C. § 227(c)(5)....................................................................... 1, 4, 6, 9, 10, 11

47 U.S.C. § 227(e)(1)................................................................................................6

47 U.S.C. § 227(e)(8)(A)...........................................................................................6

47 U.S.C. § 227(e)(8)(B)...........................................................................................6

47 U.S.C. § 227(e)(8)(C)...........................................................................................6

47 U.S.C. § 227(e)(8)(D)...........................................................................................6

47 U.S.C. § 227(i)......................................................................................................6

*Residential*, Dictionary.com, https://www.dictionary.com/browse/residential (last visited May
    17, 2025). ................................................................................................................5

*Residential*, The Britannica Dictionary, https://www.britannica.com/dictionary/residential (last
    visited May 17, 2025). ............................................................................................5

**MEMORANDUM OF LAW**

I.     **INTRODUCTION**

Plaintiff fails to allege a claim for relief under the Do-Not-Call Registry ("DNCR") provisions of the TCPA, found at 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2). *See generally* Class Action First Amended Complaint, ECF No. 19.

First, a plain reading of the DNCR provisions reveal that Plaintiff lacks standing. To allege a violation of these rules, the claimant must constitute a "residential telephone subscriber." *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c). But despite Plaintiff's proclamations that he uses his cellular telephone for residential purposes, a cellular telephone is not a residential telephone regardless of the purposes for which it is used. A residential telephone is properly understood to refer to a home phone or landline and was understood this way by Congress when the TCPA was passed.

And because the DNCR provisions only apply to "residential telephone subscribers," text messages cannot be "telephone solicitations." Landlines simply do not receive text messages. This conclusion is supported by the plain language of Subsection 227(c), which specifically makes the receipt of "more than one *telephone call*" a violation. 47 U.S.C. § 227(c)(5) (emphasis added). And since Plaintiff only received *one* telephone call, he cannot state a claim under the DNCR provisions.

And regardless of the many courts that have held otherwise, it is ultimately *Congress's* job to decide what the law is and change it if it no longer applies. *See Corner Post, Inc. v. Bd. Of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 825 (2024) ("'[T]he ball is in Congress' court.' Section 2401(a) is 75 years old. If it is a poor fit for modern APA litigation, the solution is for Congress to enact a distinct statute of limitations for the APA.") (quoting *Ledbetter v. Goodyear Tire & Rubber*

1

*Co.*, 550 U.S. 618, 661 (2007) (Ginsburg, J., dissenting)). The courts must simply give effect to the plain meaning of the law, irrespective of agency interpretation. *See Honeycutt v. United States*, 581 U.S. 443, 454 n.2 (2017) ("But the Court cannot construe a statute in a way that negates its plain text[.]"); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 393 (2024) ("[A]gency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference. Under the APA, it thus 'remains the responsibility of the court to decide whether the law means what the agency says.'") (quoting *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 109 (2015) (Scalia, J. concurring in judgment)). The plain law supports dismissal of Plaintiff's First Amended Complaint, as RiseUp requests.

## II.     PLAINTIFF'S ALLEGATIONS

In his First Amended Complaint, Plaintiff claims that RiseUp violated the National Do-Not-Call Registry (the "DNCR") provisions of the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c), by sending him six (6) text messages and one (1) phone call despite having personally registered his telephone number on the DNCR. *See* Class Action First Amended Complaint ¶¶ 15-57, ECF No. 19 [hereinafter FAC].

As a threshold matter, Plaintiff's alleges that his cellular telephone number, (484) XXX-XXXX, is non-commercial, used for personal, residential, and household reasons, and is assigned to a residential cellular telephone exchange service for consumers and not to a telephone exchange service for businesses. *Id.* at ¶¶ 17-22. He further states that he personally registered his number on the DNCR over eight years prior to the call at issue. *Id.* at ¶ 21.

Despite this, Plaintiff claims to have received the following six text messages:

1. February 12 at 12:51 PM: "Hi George, its Olivia from RiseUp Financial. We received your inquiry about our low-interest-rate personal funding. Let's schedule a free

2

consultation to review your options that suit your needs. Can I call you now to discuss? Txt END to opt-out[.]" *Id.* at ¶ 25.

2. February 13 at 3:01 PM: "Hi George, it's Olivia from RiseUp Financial. I haven't heard back from you about our low-interest personal funding options. Do you have 5 minutes to go over your options?" *Id.*

3. February 14 at 3:05 PM: "Hey George, it's RiseUp checking in. We understand your situation & have an option designed to improve your financial outlook. Are you available to discuss?" *Id.*

4. February 17 at 3:16 PM: "Hi George, this is Olivia. I don't want to intrude, but I also don't want you to miss out on a program that could significantly improve your financial situation." *Id.*

5. February 18 at 3:20 PM: "Hi George, it's Olivia. I know life gets busy, but a 5-minute call could be the difference before your finances become overwhelming." *Id.*

6. February 19 at 3:27 PM: "Hi George, it's Olivia. from RiseUp. I was about to close your file, but I wanted to reach out one last time to help you avoid costly fees. We know it's stressful, but we're here to help." *Id.*

In addition to these text messages, Plaintiff claims to have also received a phone call on February 17, 2025, during which he informed RiseUp that he had not consented to be contacted and asked to no longer be called. *Id.* at ¶¶ 31-32. Plaintiff states that the purpose of the text messages and the call was to promote RiseUp's personal loan services. *Id.* at ¶ 28.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) provides that to survive a motion to dismiss, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled

3

to relief." The Supreme Court has further clarified this pleading standard, stating that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Therefore, a plausible complaint must do more than offer mere "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 556-57) (first two alterations added).

To determine whether a plaintiff's complaint meets this threshold, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Then, the court should assume the truth of the plaintiff's non-conclusory, factual allegations and determine whether the plaintiff "nudged their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547; *Ashcroft*, 556 U.S. at 679.

IV. **PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF BECAUSE CELLULAR TELEPHONES ARE NOT RESIDENTIAL AND TEXT MESSAGES ARE NOT ACTIONABLE UNDER THE DNCR PROVISIONS.**

    A.    **Plaintiff Is Not a "Residential Telephone Subscriber" Because the Term Properly Excludes Wireless Telephone Subscribers.**

To state a claim for relief under the DNCR provisions of the TCPA, a plaintiff must plausibly plead that he is a "residential telephone subscriber." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). However, Plaintiff's cellular phone is not, and cannot be, residential. Therefore, his First Amended Complaint necessarily fails.

        1.    **The Plain Meaning of "Residential Telephone Subscribers" Excludes Cellular Telephone Subscribers.**

It is axiomatic that where the plain meaning of a statute is unambiguous, that plain meaning controls. *See, e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our inquiry must cease

4

if the statutory language is unambiguous[.]"); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (calling the plain meaning the "cardinal canon" of statutory interpretation and explaining that "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). The determination of whether the statute is clear or ambiguous is "determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341 (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 467, 477 (1992), and *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991)).

Ordinarily, the word 'residential' is used in reference to one's home. Indeed, the Britannica Dictionary defines the word, in relevant part, as "of or relating to the places where people live." *Residential*, The Britannica Dictionary, https://www.britannica.com/dictionary/residential (last visited May 17, 2025). Dictionary.com defines the word as (1) "of or relating to residence or to residences" and (2) "suited for or characterized by private residences." *Residential*, Dictionary.com, https://www.dictionary.com/browse/residential (last visited May 17, 2025). Accordingly, the plain language of "residential telephone" unambiguously refers to a telephone used in the home. *See Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 n.7 (E.D. Pa. 2019) ("[T]he plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere.").

The term's placement within the statute supports this interpretation. Subsection 227(c) of the TCPA specifically directs the FCC to initiate a rulemaking proceeding and promulgate regulations to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1), (2). Congress explicitly authorized the FCC to establish and operate the DNCR for such "residential subscribers[.]" 47

U.S.C. § 227(c)(3). Therefore, Subsection 227(c)(5) is properly understood within this context as providing a private right of action for residential telephone subscribers who receive objectionable telephone solicitations. 47 U.S.C. § 227(c)(5).

Even the Third Circuit has acknowledged that the term 'residential' is not defined in the TCPA, and has interpreted it to refer to landline telephones—explicitly contrasting them with wireless or cellular lines. This interpretation is consistent with the rest of the statute: the TCPA specifically references cellular telephones and text messages, making it clear that Congress deliberately distinguished between residential landlines and other forms of communication. *See Perrong v. Victory Phones LLC*, No. 20-5317, 2021 WL 3007258, at *7 n.6 (E.D. Pa. July 15, 2021) ("The TCPA does not define 'residential.' The Third Circuit Court of Appeals has interpreted residential to refer to landlines and has juxtaposed those physical lines with wireless ones.") (citing *Gager v. Dell Fin. Servs., LLC*, 757 F.3d 265, 273 (3d Cir. 2013) (The residential telephone line section applies "only to autodialed calls made to land-lines.")); *see also*, 47 U.S.C. § 227(b)(1)(A)(iii) ("cellular telephone service"); *id.* at (b)(2)(C) (same); *id.* at (b)(2)(H) (same); *id.* at § 227(e)(1) ("text messaging service"); *id.* at (e)(8)(A) ("text message sent using a text messaging service"); *id.* at (e)(8)(B) (same); *id.* at (e)(8)(C) (defining "text message"); *id.* at (e)(8)(D) (defining "text messaging service"); *id.* at § 227(i) (defining "text message"); *id.* at § 227(j) (defining "text message").

Indeed, "'[a] familiar principle of statutory construction . . . is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute.'" *Shelton*, 378 F. Supp. 3d at 363 n.7 (quoting *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006)). Based on this very reasoning, this Court similarly determined that it

6

was "not convinced that Congress and the FCC . . . intended to protect 'cellular telephone subscribers' along with 'residential telephone subscribers.'" *Id.* This conclusion is correct.

### 2. The Legislative History of the TCPA Confirms that Section 227(c) Was Intended to Apply to *Residential* Telephones, Not Cellular Telephones.

The legislative history of the TCPA confirms this reading. In enacting the TCPA, Congress specifically found that "[t]he use of the telephone to market goods and services ***to the home*** and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques." 147 CONG. REC. S18781, S18781, 1991 WL 252592, at *1 (1991) (emphasis added). As a result, "[m]any consumers [were] outraged over the proliferation of intrusive, nuisance calls ***to their homes*** from telemarketers." *Id.* (emphasis added).

The Congressional Record makes it clear that Congress understood the DNCR and its protections under the TCPA to apply to landlines as an extension of the privacy rights attached to the home. *See* 149 CONG. REC. S11967, S11959 (2003) ("Unsolicited phone calls are an intrusion on the phone line that most American people pay every month to have ***in their home***.") (emphasis added); *id.* at S11959-60 ("I think this is very important legislation just for the peace of mind for a lot of the people ***at home***. . . . I know in our ***household*** we get bothered by [telemarketing calls] a lot . . . . This Do Not Call List stops that from happening[.]") (emphasis added); *id.* at S11960 ("[P]eople are subjected to unwanted and annoying marketing calls ***to their homes*** at all times of the day, including the dinner hour . . . . The FTC's registry will give Americans who want to avoid these unsolicited sales pitches a chance to stop annoying intrusions ***into their home*** …. In the end, the Federal Trade Commission expects 60 percent of the Nation's ***households*** with approximately 60 million ***home phone lines*** to sign on to the registry.") (emphasis added); *id.* at S11961 ("No wonder people feel like they are under siege ***in their own home***.") (emphasis added); *id.* at S11962 ("[T]elemarketing is, for many Americans, an annoyance that they just do not want to have. After

7

all, we are talking about the ***privacy of people's homes***.") (emphasis added); *id.* at S11962-63 ("The key is people are saying we don't want to be bothered. Part of freedom, it seems to me, is the freedom from being bothered by people when you are ***in your own home*** . . .. [W]hen [the DNCR] goes into effect, that is when people will start having some peace of mind ***at home***.") (emphasis added); *id.* at S11963 ("[I]t is the people who have the right to decided that they do not want to be hounded by telemarketers and those who would interrupt the ***sanctity of their homes***.... Through this legislation we can have that peace and privacy ***within our own homes.***") (emphasis added); *id.* at S11965 ("Citizens should have the right not to be disturbed by unsolicited calls ***in their own homes*** and to Do-Not-Call registry empowers citizens to stop these calls.") (emphasis added); *id.* at S11966 ("People should be able to enjoy the peace and quiet of ***their own homes***, undisturbed by unsolicited sales calls.") (emphasis added).

Therefore, at the time the TCPA was enacted, the DNCR was understood to apply to residential landline telephones. Since "'every statute's meaning is fixed at the time of enactment[,]'" ***this*** is the "single, best meaning." *Loper Bright Enters.*, 603 U.S. at 400 (quoting *Wisc. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018)).

### 3. The FCC's Interpretation Is Incorrect and Does Not Bind This Court.

While the FCC has held that "residential telephone subscribers" encompasses wireless subscribers, this conclusion contradicts the basic tenets of statutory interpretation counseling otherwise. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14038-39 (2003) (expanding "the national database [to] allow for the registration of wireless telephone numbers" and "allow[ing] wireless subscribers to benefit from the full range of TCPA protections.").

8

In so holding, the FCC noted that "it is well-established that wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phones." *Id.* at 14038. This is true. Landlines are no longer as prevalent as they were in 1991. And it may also be true that the policy concerns underlying the FCC's expansion of the DNCR and its protections advance the TCPA's goal of protecting consumers from unwanted telephone solicitations. But policy concerns, however valid, do *not* usurp the TCPA's plain language. It is for Congress—not the courts—to resolve those concerns. Until then, the proper meaning of a "residential telephone" under the TCPA is a landline. *See Corner Post, Inc.*, 603 U.S. at 825 ("'[T]he ball is in Congress' court.' Section 2401(a) is 75 years old. If it is a poor fit for modern APA litigation, the solution is for Congress to enact a distinct statute of limitations for the APA.") (quoting *Ledbetter*, 550 U.S. at 661 (Ginsburg, J., dissenting)).

This Court need not defer to the FCC's interpretation of this issue. *See Loper Bright Enters.*, 603 U.S. at 393 ("[A]gency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference. Under the APA, it thus 'remains the responsibility of the court to decide whether the law means what the agency says.'") (quoting *Perez*, 575 U.S. at 109 (Scalia, J. concurring in judgment)). Ultimately, the "best reading" of the TCPA is "'the reading the court would have reached' if no agency were involved." *Loper Bright Enters.*, 603 U.S. at 400 (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.11 (1984)).

The answer here is clear: cellular telephones are not residential telephones under the TCPA. Plaintiff alleges that he is a residential telephone subscriber by virtue of using his cellular telephone. But regardless of the purposes for which he uses this phone, it is simply not residential. His FAC must therefore be dismissed.

      **B.**      **Plaintiff's First Amended Complaint Must Be Dismissed Because Text Messages Do Not Violate the DNCR Provisions and Plaintiff Only Alleges One Call.**

For a complaint alleging violations of the DNCR provisions to survive a motion to dismiss, the plaintiff must also plausibly plead that he or she received at least two "telephone solicitations." *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c). Within the context of the DNCR provisions, however, text messages are not telephone solicitations.

The TCPA defines "telephone solicitation" to mean "the initiation of *a telephone call or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 U.S.C. § 227(a)(4) (emphasis added); 47 C.F.R. § 64.1200(f)(15) (emphasis added). While a modern reading might suggest that the term 'message' could refer to either a voicemail or a text message, such an interpretation is anachronistic—text messaging technology did not exist at the time, as the first text message was not sent until December 3, 1992. *Compare* Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (originally enacted on December 20, 1991), *with First SMS Text Message Is Sent*, HISTORY (Oct. 4, 2022), https://www.history.com/this-day-in-history/December-3/first-sms-text-message-sent ("On December 3, 1992, the first SMS text message in history is sent[.]").

A basic statutory analysis reveals as much. First, Subsection 227(c)(5) specifically creates a private right of action for "[a] person who has received more than one *telephone call*." 47 U.S.C. § 227(c)(5) (emphasis added). Congress could have easily created a private right of action for a person who received "a telephone call or message"—it used this language elsewhere in the statute to define 'telephone solicitation.' *See id.* at § 227(a)(4). Instead of creating this private right of action for a person who has received more than one telephone solicitation, or more than one telephone call or text message, Congress specifically referred to telephone calls in isolation. The logical negative inference is that Congress meant this private right of action to be invoked only by

10

the receipt of telephone calls. *See Shelton*, 378 F. Supp. 3d at 363 n.7 (quoting *Hamdan*, 548 U.S. at 578).

Second, the DNCR provisions specifically prohibit the initiation of telephone solicitations to "residential telephone subscribers" and *not* to cellular telephone subscribers. 47 C.F.R. § 64.1200(c). As we've already established, "residential telephone subscribers" refers to individuals who subscribe to telephone service for their landline phones. And since text messages cannot be sent and received by landline phones, they cannot constitute violations of the DNCR provisions. The very same legislative history showing that Congress considered the DNCR provisions to apply specifically to landline phones confirms this point—it is devoid of reference to cellular telephones and to text messages. *See generally* 149 CONG. REC. S11957 (2003).

Again, RiseUp is aware that the FCC has included text messages sent to wireless phones within the purview of the DNCR provisions. *See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7965 (2015) (reiterating that "[t]ext messages are 'calls' subject to the TCPA[.]"). But this, too, is misguided and contrary to the statutory language, regardless of the policy considerations it supports. Indeed, the "most fundamental semantic rule of interpretation" is that "[w]ords are to be understood in their ordinary, everyday meanings." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 6 (2012); *see also Honeycutt*, 581 U.S. at 454 n.2 ("But the Court cannot construe a statute in a way that negates its plain text[.]"). This Court is not required to defer to the FCC's flawed interpretation—it must decide whether the law means what the FCC says. *See Loper Bright Enters.*, 603 U.S. at 393 (quoting *Perez*, 575 U.S. at 109 (Scalia, J. concurring)).

Here, the TCPA's plain language is self-evident: text messages are not telephone solicitations within the purview of the DNCR provisions. Since text messages are not telephone

11

solicitations within this context, the only relevant allegation in Plaintiff's First Amended Complaint is that he received a single phone call on February 17, 2025. *See* FACT ¶ 31, ECF No. 19. Even assuming that this phone call is a telephone solicitation, Plaintiff fails to state a claim—Subsection 227(c)(5) requires Plaintiff to have received "***more than one telephone call*** within any 12-month period" to invoke the private right of action. 47 U.S.C. § 227(c)(5) (emphasis added). Plaintiff's First Amended Complaint must therefore be dismissed.

## V.     CONCLUSION

For the foregoing reasons, RiseUp respectfully requests this Court to dismiss Plaintiff's Complaint.

Dated: June 16, 2025

                                TROUTMAN AMIN, LLP

                                */s/ Jenniffer Cabrera*
                                Jenniffer Cabrera, *pro hac vice*
                                1825 NW Corporate Blvd, Ste. 100
                                Boca Raton, Florida 33431
                                400 Spectrum Center Dr., Ste. 1550
                                Irvine, California 92618
                                Telephone: 561-834-0883
                                jenniffer@troutmanamin.com
                                *Counsel for Defendant RiseUp Financial Group, LLC*

## CERTIFICATE OF CONFERRAL

Pursuant to Judge Murphy's Standing Order, I hereby certify that on May 20, 2025, the parties met and conferred on the substance of the enclosed motion. It is RiseUp's position that discovery should be stayed pending the resolution of this motion, as the issues it raises are

dispositive, and is filing a motion to this effect. Plaintiff opposes this motion and the stay of discovery.

*/s/ Jenniffer Cabrera*
Jenniffer Cabrera

### CERTIFICATION

Pursuant to E.D. Pa. L.R. 7.1(d), I hereby certify that on June 16, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Jenniffer Cabrera*
Jenniffer Cabrera
