## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOUREY NEWELL, individually and on behalf
of a class of all persons and entities similarly
situated,

        Plaintiff

vs.

RISEUP FINANCIAL GROUP, LLC

        Defendant.

Case No. 25-cv-1402

## PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS

# Table of Contents

1.  **Introduction** ................................................................................................ 6

2.  **Background** ................................................................................................. 7

3.  **Standard** ..................................................................................................... 8

4.  **Argument** ................................................................................................... 9

    a.  **The Plaintiff plainly alleges that his telephone number is his residential telephone line.** 9

    b.  **The National Do Not Call Registry Applies to all Consumer Telecommunications Services based on the Plain Language of the Statute.** .................................. 11

    c.  **Courts have Repeatedly Held that the Do Not Call Registry Protection Applies to Cell Phones and the Circuit Court of Appeals have held that Registering a Number on the Do Not Call List makes it "Presumptively Residential".** ............................... 15

    d.  ***McLaughlin*** **Supports the Plaintiff's position, as the only District Court to Interpret** *McLaughlin* **in a TCPA case has held on this same issue.** .................................. 17

    e.  **Text Messages are Calls under the TCPA.** ................................................ 22

5.  **Conclusion** ................................................................................................ 28

# Table of Authorities

*Cases*

*Abboud v. Lotta Dough, LLC*, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547 (W.D. Tex. Feb. 27, 2025 _____ 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) _____ 8

*Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195 (D. Mass. 2021) _____ 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) _____ 8

*Breda v. Cellco P'ship*, 934 F.3d 1 (1st Cir. 2019)_____ 17

*Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 739 F. Supp. 3d 195 (S.D.N.Y 2024) _____ 14

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) _____ 22

*Chennette v. Porch.Com, Inc.*, 50 F.4th 1217 (9th Cir. 2022)_____ 17

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016)_____ 8

*Cunningham v. Cap. Advance Sols., LLC*, No. CV 17-13050 (FLW), 2018 WL 6061405 (D.N.J. Nov. 20, 2018) _____ 10

*Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989). _____ 20

*Dawson v. Porch.com*, No. 2:20-cv-00604-RSL, 2024 U.S. Dist. LEXIS 206363 (W.D. Wash. Nov. 13, 2024) _____ 23

*Doyle v. JTT Funding, Inc.*, No. LACV1806145JAKASX, 2019 WL 13037025 (C.D. Cal. Dec. 2, 2019)_____ 15

*Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) _____ 22

*Drew v. Lexington Consumer Advoc.*, No. 16-CV-00200-LB, 2016 U.S. Dist. LEXIS 188997, 2016 WL 9185292 (N.D. Cal. Aug. 11, 2016)). _____ 23

*Escano v. RCI LLC*, No. CV 22-360 DHU/GJF, 2022 WL 17251273 (D.N.M. Nov. 28, 2022 10

*Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 U.S. Dist. LEXIS 112780, 2010 WL 4261442 (S.D. Fla. Oct. 19, 2010)._____ 24

*Fischman v. Mediastratix, LLC*, No. 2:20-CV-83-D, 2021 WL 3559639 (E.D.N.C. Aug. 10, 2021) _____ 10

*Ford v. NaturaLawn of Am., Inc.,* No. 24-354 PJM, 2024 U.S. Dist. LEXIS 111192, at *16 (D. Md. June 25, 2024) _____ 27

*Frisby v. Schultz*, 487 U.S. 474 (1988). _____ 20

*Gager v. Dell Fin. Servs., LLC*, 757 F.3d 265 (3d Cir. 2013) _____ 16

*Hall v. Smosh Dot Com, Inc.,* 72 F.4th 983 (9th Cir. 2023) _____ 23

*Hodgin v. Parker Waichman Llp*, No. 3:14-CV-733-DJH, 2015 WL 13022289 (W.D. Ky. Sept. 30, 2015) _____ 15

*Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449 (M.D. Pa. Jan. 17, 2024) _____ 14

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015); _____ 23

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) _____ 15

*Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-02087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024) _____ 14

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 374 (2024) _____ 14

*Lyman v. QuinStreet, Inc.*, No. 23-CV-05056-PCP, 2024 WL 3406992 (N.D. Cal. July 12, 2024). _____ 21

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025) _____ 18

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012). _____ 28

*Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.*, 797 F.3d 1302 (11th Cir. 2015)_____ 22

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1 (2019) _____ 18

*Perrin v. United States*, 444 U.S. 37 (1979). _____ 11

*Perrong v. Victory Phones LLC*, No. 20-5317, 2021 WL 3007258 (E.D. Pa. July 15, 2021)_ 16

*Phillips v. Mozes, Inc.*, No. 2:12-CV-04033-JEO, 2014 WL 12589671 (N.D. Ala. Sept. 3, 2014) _____ 15

*Riley v. California*, 573 U.S. 373 (2014) _____ 6, 11

*Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175 (D. Utah 2021); _____ 23

*Ross v. Blake*, 578 U.S. 632 (2016). _____ 11

*Sasin v. Enter. Fin. Grp., Inc.*, No. CV 17-4022-CBM-RAO, 2017 WL 10574367 (C.D. Cal. Nov. 21, 2017) _____ 15

*Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237 (S.D. Fla. 2019) _____ 24

*Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019) _____ 16

*Valdes v. Century 21 Real Est., LLC*, No. CV 2:19-05411, 2019 WL 5388162 (D.N.J. Oct. 22, 2019 _____ 10

*Warciak v. Subway Rests., Inc.,* 949 F.3d 354 (7th Cir. 2020) _____ 27

*Wilson v. Hard Eight Nutrition, LLC*, Civil Action No. 25-cv-144-AA (D. Or.) _____ 21

*Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373 (D. Md. Sept. 2, 2016) _____ 10

**Statutes**

**47 U.S.C § 153(53)** _____ 12, 13

**47 U.S.C. § 227(a)(2)(A)** _____ 14

**47 U.S.C. § 227(c)(5)** _____ 10


**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012)._____ 11

Webster's Collegiate Dictionary (1936) _____ 12

Webster's New Collegiate Dictionary, Eleventh Ed. (2003) _____ 12

Webster's Ninth New Collegiate Dictionary (1990)_____ 12


**Regulations**

**16 C.F.R. § 310.4(b)(iii)(B)** _____ 7

**47 C.F.R. § 64.1200(c)(2** _____passim

**47 C.F.R. § 64.1200(c)(2)** _____ 7

*In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003) _____ **25**

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) _____ **19**

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Red. _____ **16**

## 1.    Introduction

Jourey Newell uses a cellphone like nearly every American. Ubiquitous in society, cellphones have largely replaced landlines as the "residential" phones people use to communicate, whether by calling or texting. And the Telephone Consumer Protection Act protects those cell users from unwanted solicitations—just as it protects all landline users—including all cell lines listed on the National Do-Not-Call list. Were it otherwise, the TCPA would be rendered a relic like the landline itself, invoked only when a telemarketer happened to call a landline. Congress never intended that result, nor does the TCPA's text support it.

Although first enacted in 1991, the TCPA has accounted for evolving technologies like cellphones and text messaging. To that end, its provisions protect "residential telephone *subscribers*" no matter the device they use to call and text. So when Mr. Newell listed his cell number on the National Do Not Call Registry, that designation protected *him*, not his cellphone, as a subscriber using a "residential" line. And his designation had teeth. It warned telemarketers like Defendant not to call or send him texts, less they risk liability under the TCPA.

The Plaintiff's complaint alleges a straightforward proposition: his personal cellular telephone that he placed on the National Do Not Call Registry is a personal residential line. In this context, courts recognized cell phones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014).

The Plaintiff's complaint plainly pleads that the telephone number at issue is residential and the plain language of the statute supports a reading that cellular telephones can be placed on the National Do Not Call Registry and that when those cellular telephones receive an unwanted text message, such conduct violates the TCPA.

As such, the Defendant's motion should be denied.

## 2.    Background

"Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9). "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id…*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as

is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019). Plaintiff Jourey Newell ("Plaintiff") brings this action under the TCPA alleging that RiseUp Financial Group, LLC contacted the Plaintiff, whose number is on the National Do Not Call Registry.

### 3.    Standard

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

### 4.    Argument

**a.    The Plaintiff plainly alleges that his telephone number is his residential telephone line.**

The residential nature of the telephone line at issue is plain from the Plaintiff's complaint,

including the following allegations:

- Mr. Newell's cellular telephone number, (484) XXX-XXX, is a non-commercial telephone number.
- The number is a residential telephone line because it is assigned to a residential cellular telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.
- That account is a non-business Verizon account.
- Mr. Newell uses the number for personal, residential, and household reasons.
- Mr. Newell's telephone number has been listed on the National Do Not Call Registry since he personally registered it there for over 8 years prior to the calls at issue.
- Mr. Newell's telephone number is used primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.
- Indeed, Mr. Newell does not have a landline in his home.
- Plaintiff has never been a customer of RiseUp Financial, never did business with RiseUp Financial, nor asked or inquired to be a customer of RiseUp Financial.

*See* First Amended Complaint (ECF No. 17) at ¶¶ 17-24. So without more, Plaintiff sufficiently

alleges that his telephone is a residential telephone. And because "the court must accept all

factual allegations in a complaint as true and take them in the light most favorable to the

plaintiff", *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008), Defendant's

contention that Plaintiff cannot bring suit under 47 U.S.C. § 227(c) because the alleged text

messages were not calls made to a residential telephone, fails as it is contradicted by express

allegations in Plaintiff's class action complaint. *See, e.g., Izor v. Abacus Data Sys., Inc.*, No. 19-

CV-01057-HSG, 2019 WL 3555110, at *2 (N.D. Cal. Aug. 5, 2019) ("[the plaintiff] alleges that

'[h]is cellular phone number is not currently associated with a business and is for personal use." .

. . [and that he] "registered his cellular phone number on the [do-not-call list]'. The Court thus

finds no categorical bar to Plaintiff alleging a violation of 47 U.S.C. § 227(c)(5) through conduct violating 47 C.F.R. § 64.1200(c)(2) and (d), as applied to solicitations to his wireless telephone number under 47 C.F.R. § 64.1200(e)").[1]

---

[1]     *See also Escano v. RCI LLC*, No. CV 22-360 DHU/GJF, 2022 WL 17251273, at *16 (D.N.M. Nov. 28, 2022) ("the Complaint alleges facts that plausibly suggest Plaintiff's cell phone qualifies as 'residential' under the applicable statutes"), *report and recommendation adopted*, No. 222CV00360DHUGJF, 2023 WL 34525 (D.N.M. Jan. 4, 2023); *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 202 (D. Mass. 2021) ("Because Barton has pled that her cell phone number is registered on the Do Not Call Registry and the Do Not Call Registry is only open to residential subscribers and keeping in mind that at the motion to dismiss stage all reasonable inferences are to be made in her favor, I find that Barton has sufficiently pled that she is a residential subscriber for the purposes of her mobile phone number to survive the Rule 12(b)(6) motion."), *adhered to on denial of reconsideration*, 541 F. Supp. 3d 138 (D. Mass. 2021); *Fischman v. Mediastratix, LLC,* No. 2:20-CV-83-D, 2021 WL 3559639, at *4 (E.D.N.C. Aug. 10, 2021) ([The plaintiff] has alleged a concrete injury. In 2004, [he] registered his cell phone number with the Do-Not-Call registry. . . . Since 2018, [he] has received over 25 unsolicited telemarketing calls[.]"); *Valdes v. Century 21 Real Est., LLC*, No. CV 2:19-05411, 2019 WL 5388162, at *3 (D.N.J. Oct. 22, 2019) ("The Court finds that in light of the FCC guidance stating that it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections, it is sufficient under Rule 12(b)(6) that Valdes has alleged that his cellular telephone number was not used for a business purpose."); *Cunningham v. Cap. Advance Sols., LLC*, No. CV 17-13050 (FLW), 2018 WL 6061405, at *4 (D.N.J. Nov. 20, 2018) ("Here, at this juncture of the litigation, Plaintiff has sufficiently pled that his cellular phone is used for residential purposes."); *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373, at *6 (D. Md. Sept. 2, 2016) (noting "the FCC applied the prohibition in § 64.1200(c) to wireless telephone numbers," and explaining the plaintiff's allegations "his cellular telephone number has been listed on the DNC registry since 2006" and "the calls were made for telemarketing purposes . . . . are sufficient to establish . . . entitlement to statutory damages under the TCPA), *aff'd*, 678 F. App'x 165 (4th Cir. 2017); *Long v. Cat Exteriors*, No. SA-22-CV-00923-JKP, 2022 WL 17744052, at *4 (W.D. Tex. Dec. 15, 2022) ("[the plaintiff] alleges her cellphone number was on the national Do-Not-Call list; she asked telemarketers . . . multiple times to stop calling her cellphone and to place her on its internal Do-Not-Call list, and; the Defendants continued to call her cellphone. . . . [the plaintiff] plead sufficient facts to state a plausible claim for relief under the TCPA").

**b.    The National Do Not Call Registry Applies to all Consumer Telecommunications Services based on the Plain Language of the Statute.**

Defendant's argument that a cell phone cannot be a "residential" telephone number, and therefore that no cellular telephone is entitled to the TCPA's Registry protections, rests on a statutory interpretation that is "a bit strained as an initial matter." *Riley v. California*, 573 U.S. 373, 397 (2014). As with any question of statutory interpretation, the Court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). That analysis shows that residential cell phones are plainly eligible for inclusion in the National Do Not Call Registry, as Defendant concedes the consensus of authority in the Third Circuit has concluded. As such, the Plaintiff need not, and does not, rely on the FCC's interpretation of an unambiguous statutory provision.

In enacting the Do Not Call provisions of the TCPA, Congress chose to extend protection to "residential telephone subscribers." *See* 47 C.F.R. § 64.1200(c)(2) (limiting DNC Registry to "residential" subscribed numbers). Reading the term "residential" to exclude other services, such as cellular telephone services, used for personal, household purposes, just as Plaintiff has pled and Court ruled here, is inconsistent with multiple canons of construction. Without a controlling statutory definition, as here, the term "residential" takes on its "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). And, under the fixed-meaning canon, "[w]ords must be given the meaning they had when the text was adopted." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012).

With respect to the TCPA, there are potentially two relevant time frames to consider: 1934, when the Telecommunications Act of which the TCPA is a part was enacted, and 2003, when Congress passed the Do-Not-Call Implementation Act. Regardless of which the Court chooses, the meaning of the term "residential," as an adjective modifying "telephone subscribers," is the same. "Residential" means "used as a residence *or by residents*; adapted to

(1936)/restricted to (2003) . . . residences; of or connected with (1936)/relating to (2003) . . . residence or residences." *Compare* Webster's New Collegiate Dictionary, Eleventh Ed. (2003) *with* Webster's Collegiate Dictionary (1936) (emphasis added) (cleaned up).

Especially in Webster's 2003 sense of "residential" meaning "restricted to" residences, the term "residential" is contrasted with the adjective "nonresidential," which is "not used as" or "not restricted to" residences or by residents. Webster's New Collegiate Dictionary, Eleventh Ed. (2003). In using "residential" language, Congress realized that, in the future, traditional residential forms of telecommunication like copper landlines may come to be supplanted by other technologies, like T1 lines, Fiber Optics, VoIP, and cellular technologies. In using the term "residential," Congress meant what it said. It meant to contrast residential service *uses* from nonresidential *uses* and restrict DNC Registry protections to the former, regardless of the type of technology that the consumer chooses to use or a technology that can change. That interpretation is consistent with the language of the Telecommunications Act, which applies to all forms of communication, including using technologies yet to be developed. 47 U.S.C § 153(53) (defining a telecommunications service "regardless of the facilities used"). Any other reading arbitrarily limits the scope of the term "residential" to read "copper landline." No part of the statute contains a suggestion that the general term "residential" should be given such a limited, narrow meaning.

Importantly, at the time the DNC Registry provisions of the TCPA were enacted, the Code of Federal Regulations specifically relating to "Telecommunications" defined a "residential subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber."

*See* 47 C.F.R. § 64.2305(d).[2] A "business subscriber" was defined as a "subscriber to a telephone exchange service for businesses." *See* 47 C.F.R. § 64.2305(b). Accordingly, "consumers" who subscribe to "telephone exchange services" are protected by the DNC Registry. "Businesses" who subscribe to "telephone exchange services" for businesses are not. And a "telephone exchange service" clearly implicates cell phones, in that cell phone service is provided, "through a system of switches, transmission equipment, or other facilities (or combination thereof) by which a subscriber can originate and terminate a telecommunications service." 47 C.F.R. § 64.2305(g)(1)(B). And a "telecommunications service" means " the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, *regardless of the facilities used*." 47 U.S.C § 153(53) (emphasis added). And "telecommunications" means "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C § 153(50). That is to say, say, a "telephone exchange service" for consumers allows a residential subscriber to place and receive information, such as telephone calls, regardless of the facilities used.

As such, "according to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential purposes…*i.e.*, for personal activities associated with his or her private, domestic life.'" *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-02087, 2024 WL 4198134, at *6

---

[2] The regulatory definitions of "business subscriber" and "residential subscriber" were enacted in 1999, prior to Congress' creation of the Do Not Call Registry in 2003. *Compare* 47 C.F.R. § 64.1200(e), *citing* 18 F.C.C. Rcd. 14014, 14032, 14043; 2003 FCC LEXIS 3673 at ¶¶ 22, 42 (June 26, 2003) (Do Not Call Registry was enacted in 2003) *with* 47 C.F.R. § 64.2305(b) and (d) (effective date of regulations is October 5, 1999).

(N.D. Ohio Sept. 16, 2024) (citing *Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL),

739 F. Supp. 3d 195, 206 (S.D.N.Y 2024)). In other words, the analysis turns on *how* the

subscriber uses the line, not what *device or technology* they use it on. Indeed, as our sister court

in the Middle District of Pennsylvania held last year:

> The best reading of the word "residential" is not that it modifies the "telephone," but
> rather that "residential" and "telephone" both modify the "subscriber." So instead of
> describing a "subscriber" who owns a "residential telephone," Section 227(c)(1)
> describes a "telephone subscriber" who has subscribed for "residential," i.e., personal,
> purposes. "Residential" is therefore used in the broader sense of "relating to a resident" to
> distinguish such a subscriber from a business or commercial telephone subscriber, who
> cannot be added to the Do Not Call registry.

*Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa.

Jan. 17, 2024).

Indeed, the TCPA itself distinguishes between "business subscriber" and "residential

subscriber" in 47 U.S.C. § 227(a)(2)(A): "The term "established business relationship" … "shall

include a relationship between a person or entity and a *business subscriber* subject to the same

terms applicable under such section to a relationship between a person or entity and a *residential*

*subscriber*." (emphasis added). This shows "Congress used the term 'residential' in the broader

sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial

telephone subscriber." *Cacho*, 739 F. Supp. 3d at 206. This distinction "would make little sense

if the term 'residential subscriber' referred to users with landlines physically located in their

residences, rather than users who use their phones for residential purposes, because many

individuals operate home-based businesses." *Id.* at 207.

As such, residential cell phones can be registered on the DNC. *Loper Bright Enters. v.*

*Raimondo*, 603 U.S. 369, 374, 14 (2024) ("Courts interpret statutes, no matter the context, based

on the traditional tools of statutory construction, not individual policy preferences.").

**c.    Courts have Repeatedly Held that the Do Not Call Registry Protection Applies to Cell Phones and the Circuit Court of Appeals have held that Registering a Number on the Do Not Call List makes it "Presumptively Residential".**

Courts both pre- and post-*Loper Bright* have repeatedly analyzed the very question posed by this motion to dismiss on other motions to dismiss and have repeatedly rejected similar arguments to those proffered by the Defendant. Indeed, the Fourth Circuit in *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 657 (4th Cir. 2019) concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, by virtue of their mere registration, are *presumptively residential*:

> The statute marks its own boundary. Suit can only be brought by those who receive multiple violative calls. Calls are only violative if the phone number was on the Do-Not-Call registry. And **a number can only be placed on such a registry if the number is a residential line.** Whatever work we may be required to do for more broadly worded statutes, Congress did the work for us here.

*Id. at 657* (emphasis added). The residential number presumption has been recognized by Courts nationwide. *See, e.g.*, *Sasin v. Enter. Fin. Grp., Inc.*, No. CV 17-4022-CBM-RAO, 2017 WL 10574367, at *5 (C.D. Cal. Nov. 21, 2017) (denying MTD for personal cell on DNC); *Hodgin v. Parker Waichman Llp*, No. 3:14-CV-733-DJH, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015) (same); *Phillips v. Mozes, Inc.*, No. 2:12-CV-04033-JEO, 2014 WL 12589671, at *6 (N.D. Ala. Sept. 3, 2014) (holding that allegation that cell phone was registered on DNC created reasonable inference of residential use); *Doyle v. JTT Funding, Inc.*, No. LACV1806145JAKASX, 2019 WL 13037025, at *8 (C.D. Cal. Dec. 2, 2019) (judgment for plaintiff).

If Congress intended to limit "residential subscribers" to users of wireline devices or only those devices physically contained within a home, it would have done so. Congress instead chose to focus on the subscriber's *use* of the phone, rather than the *technology* by which a given phone

functions. The plain language of the statute therefore supports the FCC's rules and regulations. Defendant' approach amounts to imaginative reconstruction, "putting [it]self in the place of the enacting legislature and trying to divine what the collective body would have wanted done." Scalia & Garner at 325.

The cases relied upon by the Defendant are unpersuasive outliers. First, in *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356 (E.D. Pa. 2019), the plaintiff received multiple telemarketing calls to his cellular telephone from the defendant in alleged violation of the TCPA and filed suit. The court *sua sponte* expressed its own divination whether cellular telephone numbers were covered by the TCPA's DNC provisions. The court nevertheless awarded the plaintiff $33,000 in statutory damages. Indeed, subsequent decisions from the Eastern District of Pennsylvania have made clear that the TCPA's Do Not Call protections apply to cell phones.[3] Furthermore, reliance on *Perrong v. Victory Phones LLC*, No. 20-5317, 2021 WL 3007258, at *7 n.6 (E.D. Pa. July 15, 2021) and *Gager v. Dell Fin. Servs., LLC*, 757 F.3d 265, 273 (3d Cir. 2013) relies on *an entirely different subsection of the statute*, "*Compare* 47 U.S.C. § 227(b)(1)(A)(iii) *with id.* § 227(b)(1)(B). But Congress also intended to pass legislation that addressed the consumer-borne costs from unsolicited phone calls. *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Red. at 7979-80 (Congress' intent "was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate."). Victory Phones essentially asks the Court to cherry-pick the

---

[3] *See Marks v. Unique Lifestyle Vacations, LLC*, No. 20-4915-KSM, 2021 WL 5495778 (E.D. Pa. Nov. 22, 2021) ("we find that plaintiff's allegations pertaining to his cell phone—namely, that he used the cell phone for personal purposes, including booking vacations—are sufficient" to establish plaintiff was a "residential subscriber"); *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *4 (E.D. Pa. Mar. 14, 2025) (holding the same Plaintiff had stated a claim for calls to his residential cell phone on the Do Not Call Registry).

Congressional intent that shields it from liability. That the Court will not do." The Defendant's reliance on a different section of the statute is a pure red herring.

As explained above, the "residential" telephone line requirement casts a far broader net than the type of device or technology that receives the calls. Someone's residential phone can be several different types of phone lines, copper, fiber, wireless, or wireline. The dispositive analysis is its treatment and utilization, as the Communications Act itself defines and the statutory text illuminates. *Compare* 47 C.F.R. § 64.2305(d) (residential) *with* 47 C.F.R. § 64.2305(b) (nonresidential).

As the Ninth Circuit held in *Chennette v. Porch.Com, Inc.,* 50 F.4th 1217 (9th Cir. 2022):

> Defendant argue that because plaintiffs use their cell phones both for personal calls and for calls associated with their home improvement businesses, they do not qualify as residential subscribers… The disputed question is whether a cell phone that is used for both business and personal purposes can be a "residential" phone within the meaning of § 227(c). In the 2003 TCPA Order, the FCC concluded that a cell phone registered on the do-not-call registry is presumptively a residential phone . . . Relying on the FCC's regulations and orders, we agree with the view of the majority of the district courts and conclude that a presumptively residential cell phone can be residential even when used for both personal and business purposes.

*Id.* at 1223-1224 (9th Cir. 2022). Congress' intent in enacting the TCPA and the regulations enacting the DNC Registry was to protect the *personal* phone numbers of consumers from intrusive telemarketing calls. *See Breda v. Cellco P'ship,* 934 F.3d 1, 11 (1st Cir. 2019) (recognizing the TCPA as a remedial consumer statute to be interpreted broadly to effectuate its intent). Denying consumers the privacy protections afforded by the TCPA to their DNC-registered wireless numbers or other non-copper residential landlines because their primary telephone is not based on traditional wireline technology is inconsistent with this directive.

> **d.** ***McLaughlin*** **Supports the Plaintiff's position, as the only District Court to Interpret *McLaughlin* in a TCPA case has held on this same issue.**

Last month, the Supreme Court rendered its decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006 (2025), where the Supreme Court held that, in interpreting the TCPA, courts are called upon to "independently determine the law's meaning under ordinary principles of statutory interpretation while affording appropriate respect to the agency's interpretation."

"The TCPA protects businesses and consumers from intrusive telemarketing communications." *McLaughlin*, 145 S. Ct. at 2011. Section 227(c) of the TCPA gave the FCC broad authority to "evaluate alternative methods and procedures" including "'do not call' systems" "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to promulgate rules and regulations to implement that protection. 47 U.S.C. § 227(c)(1)(A)–(E). At issue here, the regulations the FCC promulgated under the TCPA, which are not subject to *McLaughlin* review or the Hobbs Act, as such regulations are "legislative rules" that have the "force and effect of law," *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1, 7 (2019), prohibit "initiating any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). The term "telephone solicitation" "means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(15). However, the term "residential telephone subscriber" is *not* defined.

The question, then, that this Court is asked to answer under *McLaughlin* is this: are cell phones a type of phone used by "residential telephone" subscribers protected by the TCPA? Helpfully, the FCC has held, since 2003, in an interpretative ruling it issued on the subject, not

only that cell phone subscribers are residential telephone subscribers, but that they are *presumptively* residential. *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("[W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'"). Prior to *McLaughlin*, one line of reasoning held that, under the Hobbs Act, the FCC's interpretation of its legislative rule was binding, absent a contrary holding as a result of a challenge in the circuit courts of appeal.

What *McLaughlin* means is that this Court is not *bound* by the FCC's interpretation that the term "residential telephone" also includes cell phone subscribers. *McLaughlin*, 145 S. Ct. at 2015. *McLaughlin* does not alter the fundamental analysis that either this Court is called upon to conduct, using "ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *Id.* Although Defendant will urge this court to "disregard" the FCC's 2003 order, *McLaughlin*, 145 S. Ct. at 2024, the Supreme Court's decision simply mandates that this Court conduct its own independent analysis. And using the textual framework the Plaintiff outlined in this opposition to the Defendant's motion, this Court should have no trouble concluding, as did the FCC, that the term "residential telephone subscriber" in the TCPA also includes subscribers to cellular telephone services, which is unbound to the type of technology a consumer uses. Indeed, as another Court held while denying a motion to stay a case pending *Mclaughlin*, "even if the FCC's ruling is not entitled to deference, an independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547, *3 (W.D. Tex. Feb. 27, 2025).

Giving due regard to the agency's interpretation, as urged by *McLaughlin*, further shows that the FCC got it right. Although this Court is not bound by the FCC's interpretation that a cell phone subscriber is presumptively a residential telephone subscriber, the Court must "afford[]

appropriate respect to the agency's interpretation." *McLaughlin*, 145 S. Ct. at 2015 (citing *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 402 (2024)). As *Loper Bright* explains, a court may even apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." 603 U.S. at 370. The FCC found that "wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phone[,]" *In Re Rules*, 18 F.C.C. Rcd. at 14038, and that "there is a growing number of consumers who no longer maintain wireline phone service, and rely only on their wireless telephone service[,] *id.* at 14039.

The FCC further concluded that such a holding was in line with Congressional intent, which was to provide significant protections under the TCPA to wireless subscribers. Indeed, it would be peculiar that Congress would extend *enhanced* protections to wireless subscribers, such as by prohibiting sending pre-recorded calls to such subscribers, while at the same time denying those same subscribers the protections afforded by permitting them to place their numbers on the Do Not Call Registry, for it "is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). To this end, the do-not-call provision's stated aim is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). Courts have long recognized the importance of residential privacy interests on a same footing as other Constitutional interests. *See, e.g.*, *Frisby v. Schultz*, 487 U.S. 474, 484 (1988). Those interests do not change merely because technology has changed: as with the First Amendment, freedom of the press applies just as concretely to internet publications as the printed word; residential privacy applies just as concretely to copper landlines as the latest 5G smartphones. "[P]rivacy

interests do not depend upon whether the undesired telephone solicitations are received on a cellular phone [or] a landline." *Lyman v. QuinStreet, Inc.*, No. 23-CV-05056-PCP, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). As such, a contrary interpretation that fails to give due regard to the FCC's interpretation is one that not only fails to give due regard to the agency's interpretation but also the "fairly discernable" intent of the statute. *McLaughlin*, 145 S. Ct. at 2016 n.4. Disregarding the FCC's interpretation, as the Defendant will undoubtedly urge, will simply lead to absurd results that are the antithesis of a rigorous independent analysis.

Indeed, the first decision that relies on the Supreme Court's decision in *McLaughlin Chiropractic Assoc., Inc. v. McKesson Corp.*, et al. was entered on Friday, June 27, 2025, *Wilson v. Hard Eight Nutrition, LLC*, Civil Action No. 25-cv-144-AA (D. Or.). The 17-page decision denying a substantially similar motion to dismiss is attached as <u>Exhibit 1</u>. In that decision, Judge Aiken summarized:

> The do-not-call provision's sole and express aim is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Courts have long recognized the importance of residential privacy interests. *See*, *e.g.*, *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) ("The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society. Our prior decisions have often remarked on the unique nature of the home . . . and have recognized that preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value.") (cleaned up); *see also* S. Rep. No. 102–178, at 4 ("The Supreme Court also has recognized that 'in the privacy of the home, . . . the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder.'") (quoting *FCC v. Pacifica Found.*, 438 U.S. 726, 748 (1978)). Defendant's interpretation would protect the privacy interest of a home landline subscriber but not a home cellular subscriber—even when a cell phone is the sole phone for home use, as is increasingly the case. Defendant effectively ties residential privacy interests to an obsolete and disappearing transmission technology. But "[t]hose privacy interests do not depend upon whether the undesired telephone solicitations are received on a cellular phone [or] a landline." *Lyman v. QuinStreet, Inc.*, No. 23-CV-05056-PCP, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). There is no evidence that a call or message transmitted by a cell tower is less intrusive than a call or message delivered by a land line. Defendant's attempt to define away the privacy interests that Congress specifically sought to protect yields an absurd result.

Finally, under *Loper Bright*, when Congress expressly empowers an agency to decide how to apply a statutory term to specific facts found by the agency, the agency interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. Here, Congress, in Section 227(c), broadly authorized the FCC to fact-find within the scope of its expertise and to "evaluate alternative methods and procedures," including "'do-not-call' systems" "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(A)–(E). Accordingly, the FCC determined, based on its findings, that to give proper meaning to the statutory text and to effect Congress's aim, cell phone users are presumptive residential telephone subscribers who may take part in the Do Not Call Registry. That interpretation is due special deference under *Loper Bright*. And, even without the special "deferential review" described in *Loper Bright*, the Court gives great weight, under *Skidmore* deference, to the FCC's interpretation because it was based on factual findings within the FCC's expertise, was thoroughly considered, validly reasoned, and consistent with the FCC's earlier and later pronouncements.

In sum, without deferring to the FCC, the Court independently concludes that the FCC got it right. Given the text, structure, and purpose of Section 227(c) and of the TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision, Section 227(c).

As reflected in the Plaintiff's underlying motion, this Court should hold the same.

### e.    Text Messages are Calls under the TCPA.

Defendant also contends that a text message is not a "call" under the TCPA and that the FCC overstepped when it interpreted a "call" to include text messages. However, the Supreme Court, Eleventh Circuit, Sixth Circuit, Ninth Circuit, and every district court disagree with Defendant's position. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'".); *Murphy v. DCI Biologicals Orlando, Ltd. Liab. Co.*, 797 F.3d 1302, 1305 (11th Cir. 2015) ("The prohibition against auto dialed calls applies to text message calls as well as voice calls."); *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury"); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir.

2015); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1222 (9th Cir. 2022); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009); *Dawson v. Porch.com*, No. 2:20-cv-00604-RSL, 2024 U.S. Dist. LEXIS 206363m, at *14 (W.D. Wash. Nov. 13, 2024) ("In addition, courts around the country have long allowed claims under 47 C.F.R. § 64.1200(d) to proceed where text messages, rather than calls, were at issue.") (citing *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1185 (D. Utah 2021); *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 199 (D. Mass. 2021); *Persichetti v. T-Mobile USA, Inc.*, 479 F.Supp.3d 1333, 1339-40 (N.D. Ga. 2020); *Drew v. Lexington Consumer Advoc.*, No. 16-CV-00200-LB, 2016 U.S. Dist. LEXIS 188997, 2016 WL 9185292, at *7 (N.D. Cal. Aug. 11, 2016)). "Defendants have not identified any case in which a claim under 47 C.F.R. § 64.1200(d) was dismissed because the telemarketing communication involved a text message rather than a phone call." *Dawson*, 2024 U.S. Dist. LEXIS 206363, at *14.

To be clear, *every* court to decide the issue has interpreted a "call" under the TCPA to include text messages, including every district court to apply the regulation to text messages post-*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). *See Dawson*, 2024 U.S. Dist. LEXIS 206363, at n.4 ("The Court agrees with this analysis regardless whether deference to the agency's interpretation is appropriate or not.")(citing *Loper Bright*, 603 U.S. 369); *Ragsdale v. Leadpoint, Inc.*, No. 2:24-cv-04542-MCS-SK, 2024 U.S. Dist. LEXIS 202327 (C.D. Cal. Nov. 5, 2024) ("Defendant calls for the Court 'to independently determine whether 47 C.F.R. § 64.1200(d)(4) applies to text messages.'….The Court puts Defendant's call on hold."); *Mantha v. Quotewizard.Com, LLC*, 347 F.R.D. 376, 387 (D. Mass. 2024) ("the texts from [defendant] amounted to 'telephone solicitations' within the meaning of the TCPA."); *Misner v. Empire Auto*

*Protect, LLC,* No. 2:24-cv-1282, 2024 U.S. Dist. LEXIS 202146, at *7, 12 (S.D. Ohio Nov. 6, 2024) (receipt of unsolicited text messages supports a private right of action under Section 227(c)); *Abboud v. Circle K Stores Inc.*, No. CV-23-01683-PHX-DWL, 2025 U.S. Dist. LEXIS 13605, at *12, 17 (D. Ariz. Jan. 27, 2025) (same); *Bradshaw v. CHW Grp., Inc.,* No. 24-cv-00114 (MEF)(JBC), 2025 U.S. Dist. LEXIS 13649 (D.N.J. Jan. 24, 2025) (same).

The fundamental flaw with Defendant's argument is the contention that the terms "call" or "telephone call" are defined by the statute. As courts have observed, these terms are *not* defined anywhere in the statute. Because the TCPA does not define the term "call", courts interpret the word "according to its 'ordinary, contemporary, common meaning.'" *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). "[T]he dictionary definition of 'call' [i]s 'to communicate with or try to get into communication with a person by a telephone.'" *Id*. (quoting *Satterfield*, 569 F.3d at 953-54) (quoting Webster's Third New International Dictionary (2002))). "Other courts have adopted this definition in the TCPA context." *Id*. (citing *Ashland Hosp. Corp. v. Serv. Employees Int'l Union Dist. 119 WV/KY/DH*, 708 F.3d 737, 742 (6th Cir. 2013); *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 U.S. Dist. LEXIS 112780, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010)).

The transmission of a text message to a consumer's telephone falls squarely within the definition of the word "call" as the purpose is to communicate with the person via their telephone. *See Satterfield*, 569 F.3d at 954 ("It is undisputed that text messaging is a form of communication used primarily between telephones."). Accordingly, since at least 2003, the FCC and courts have universally held that text messages constitute calls within the meaning of the TCPA. *In Re Rules & Reguls. Implementing Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd.

14014, 14115 (2003) (defining telemarking calls to "encompass[] both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls").[4] In *Satterfield*, the Ninth Circuit found that the FCC's interpretation was reasonable and consistent with the dictionary's definition of "call," how text messages are sent and used, and the purposes of the TCPA. 569 F.3d at 954.

Moreover, "[b]oth the FCC and the courts have recognized that the scope of the TCPA naturally evolves in parallel with telecommunications technology as it evolves, *e.g.*, with the advent of text messages and email-to-text messages." *Saunders v. Dyck O'Neal, Inc.*, 319 F. Supp. 3d 907, 911 (W.D. Mich. 2018). Indeed, in a 2015 ruling, the FCC stated, "[t]he TCPA's text and legislative history reveal Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as *new technologies emerge*." *Id.* (quoting *FCC 2015 Ruling*, 30 F.C.C. Rcd. 7961, 2015 FCC LEXIS 1586, at ¶¶ 113-15 (2015) (emphasis added)). In that ruling, the FCC found that even when the computer "dials" a cell phone number such that the message is not initiated from a telephone, it is still considered a "call" under the TCPA. *See In the Matter of Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 8019 (2015).

Application of these principles can be seen in a similar unanimous conclusion that "ringless" voicemail technology is a "call" covered under the TCPA even though the technology did not exist when the TCPA was enacted because the purpose – like text messages – is to

---

[4] "Although the agency's interpretation of the term 'call' was promulgated in the context of the TCPA's automatic telephone dialing system provision, there is no reason to believe that the term has a different meaning when used in the do-not-call provisions. The normal rules of statutory construction give identical words used in different parts of the same act the same meaning." *Dawson*, 2024 U.S. Dist. LEXIS 206363, at *13-14 (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995)).

communicate with a consumer via their telephone. *See Grant v. Regal Auto. Grp*., No. 8:19-cv-363-T-23JSS, 2020 U.S. Dist. LEXIS 248347, at *11 (M.D. Fla. July 30, 2020) ("As federal courts in this Circuit have concluded, a ringless voicemail is a 'call' and is therefore subject to the TCPA.") (collecting cases) *report and recommendation, adopted by Grant v. Regal Auto. Grp., No.* 8:19-cv-363-T-23JSS, 2020 U.S. Dist. LEXIS 248214, at *3 (M.D. Fla. Sep. 29, 2020); *Caplan v. Budget Van Lines*, No. 2:20-CV-130 JCM (VCF), 2020 U.S. Dist. LEXIS 136865, at *9 (D. Nev. July 31, 2020); *Picton v. Greenway Chrysler-Jeep-Dodge, Inc.*, No. 6:19-cv-196-Orl-31DCI, 2019 U.S. Dist. LEXIS 103796, at *5 (M.D. Fla. June 21, 2019); *Dickson v. Direct Energy, LP*, No. 5:18CV182, 2019 U.S. Dist. LEXIS 96938, at *7 (N.D. Ohio Mar. 18, 2019); *Saunders*, 319 F. Supp. 3d at 911 ("Dyck O'Neal's use of direct to voicemail technology is a 'call' and falls within the purview of the TCPA."); *Schaevitz v. Braman Hyundai, Inc.*, No. 1:17-cv-23890-KMM, 2019 U.S. Dist. LEXIS 48906, at *8 (S.D. Fla. Mar. 25, 2019) ("'ringless' voicemail, that is, a direct to voicemail message is a 'call' under the TCPA.").

Although this Court is not bound by the FCC's interpretation, this court should "afford[] appropriate respect to the agency's interpretation." *Loper Bright*, 603 U.S. at 402). Moreover, as *Loper Bright* explains, a court may even apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Id.* Such is the case here because Congress instructed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S. Code § 227(c)(1). Because Congress empowered the FCC to decide how to apply a statutory term to specific facts, the FCC's interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388. This court should therefore, respectfully, "unhesitatingly afford

deference to the [FCC] holding that a text message should be treated as a 'call' for purposes of the TCPA." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015).

Furthermore, the TCPA defines "telephone solicitation" to mean "a telephone call *or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." *Dawson*, 2024 U.S. Dist. LEXIS 206363, at *8 (47 U.S.§ 227(a)(4)) (emphasis added). Within that context, and in view of the ordinary meaning of "message," Defendant's argument falls flat. The TCPA's statutory text makes clear that the National Do Not Call Registry Provision's private right of action is afforded to "residential telephone subscribers" who receive unwanted "telephone solicitations". 47 U.S.C. § 227(c)(1). "In enacting the TCPA, Congress granted the FCC statutory authority to create rules protecting consumers from unwanted 'telephone solicitations.' *See* 47 U.S.C. § 227(c). The FCC promulgated the regulations at issue here pursuant to its delegated authority and incorporated Congress's definition of 'telephone solicitation' within them. 47 C.F.R. § 64.1200(f)(15)." *Hulce v. Zipongo Inc.*, 132 F.4th 493, 497 n.1 (7th Cir. 2025) (reasoning that a text message was a telephone solicitation but affirming dismissal on other grounds).

By its plain text, then, 47 C.F.R. § 64.1200(c)(2) prohibits making a "telephone solicitation," which such term includes *either* a *call* or a *message*. If a text message is not a "call", it is surely a "message," and therefore still actionable. *E.g.*, *Hall*, 72 F.4th at 986; *Warciak v. Subway Rests., Inc.,* 949 F.3d 354 (7th Cir. 2020); *Ford v. NaturaLawn of Am., Inc.,* No. 24-354 PJM, 2024 U.S. Dist. LEXIS 111192, at *16 (D. Md. June 25, 2024) ("At bottom, the TCPA permits a telephone consumer to sue a telemarketer if it can be shown that the consumer received more than one solicitation (whether by call or by text) within the preceding 12-month period in violation of the FCC's regulations governing such communications.").

Finally, Defendant's request to exclude text messages from the protections afforded consumers under the TCPA also ignores that "the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013); *see also Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 272 F. Supp. 2d 1365, 1376 (S.D. Ga. 2003) ("I find that § 227 is a remedial statute."). In enacting the TCPA, Congress found that "[u]nrestricted telemarketing….can be an intrusive invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). The outcome Defendant requests – allowing companies to spam consumers with unwanted text messages – would result in harm that, again. As such, the Court should deny the motion on this basis as well.

## 5.    Conclusion

Without being bound by the FCC, and in line with *McLaughlin*, this Court can independently conclude that the FCC got it right on multiple levels: as a statutory matter, as a matter of due regard to the FCC's own analysis, and in a manner than harmoniously and ordinarily interprets the statute in a manner consistent with its stated intent. An independent textual analysis of the provision warrants denial of the Defendant's motion. Similarly, a text message is a "call" under the TCPA, as every Court to consider the issue has ever decided.

RESPECTFULLY SUBMITTED AND DATED this July 19, 2025.

By: */s/ Anthony I. Paronich*
Anthony I. Paronich *Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com