IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CHET MICHAEL WILSON, individually
and on behalf of all others similarly situated,

            Plaintiffs,

    vs.

HARD EIGHT NUTRITION LLC,

            Defendant.

Civ. No. 6:25-cv-00144-AA

**OPINION & ORDER**

AIKEN, District Judge:

      Plaintiff Chet Michael Wilson, individually and on behalf of all others similarly situated, brings a putative class action against Defendant Hard Eight Nutrition LLC for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See* First Amended Compl. ("FAC"), ECF No. 1. Defendant moves to dismiss the claim under Rule 12(b)(6) or alternatively to stay the case. ECF No. 13. For the reasons stated below, Defendant's Motion, ECF No. 13, is DENIED.

BACKGROUND

      Plaintiff alleges that he registered his cellular telephone number with the Do-Not-Call ("DNC") Registry, FAC ¶ 15, and that Defendant, "corporation that resides in this District," *id.* ¶ 7, sent him "at least three . . . text messages . . . thirty-one or more days after Plaintiff registered [his] telephone number[,]" *id.* ¶ 19, in violation of the TCPA's do-not-call provision, 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c), *id.*

Page 1 – OPINION AND ORDER

¶¶ 59–62. Plaintiff alleges that "the purpose of the subject text messages was to advertise and market Defendant's business or services[,]" *id.* 21, and that "Plaintiff did not give Defendant prior express consent or permission to deliver . . . advertisement or marketing text messages to [his] telephone number[,]" *id.* ¶ 22. Plaintiff further alleges that he "does not have a landline telephone number in his home[,]" *id.* ¶ 11, that he uses his cell phone "for personal use only as one would use a landline telephone in the home," ¶ 12, "primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes," *id.* ¶ 13. He further alleges that he "is not reimbursed by a business for his cell phone plan." *Id.* ¶ 14.

Plaintiff alleges that "as a result of the subject text messages[,] . . . he suffered an invasion of privacy, an intrusion into his life, and a private nuisance." *Id.* ¶ 24. Plaintiff also alleges that Defendant "routinely violates" the TCPA in the ways described as to him and as to members of the putative class. *Id.* ¶¶ 2, 60–62.

## LEGAL STANDARD

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's allegations, a court must accept a plaintiff's allegations of fact as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). But a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A]

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation" of the action's elements. *Id.* (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

To survive a motion to dismiss, a pleading must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## DISCUSSION

Plaintiff alleges that Defendant violated the TCPA's do-not-call provision, 47 U.S.C. § 227(c), by sending marketing texts to Plaintiff's cell phone after Plaintiff had registered his cell phone number with the Do Not Call Registry. FAC ¶¶ 2, 15, 17. Defendant argues that the claim should be dismissed because the TCPA's do-not-call provision applies only to "residential telephone subscribers, not [to] cell phone users like Plaintiff." Def. Mot. at 2. The question before the Court is whether a cell phone is a "residential telephone" under the TCPA do-not-call provision, Section 227(c).

I.  The TCPA

In 1991, Congress enacted the TCPA "to protect consumers from the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing the Telephone Consumer Protection Act of 1991, Pub. L. 102–243, § 2, ¶ 12, 105 Stat. 2394 (1991)); *see also id.* § 2, ¶¶ 5, 6 (finding that "unrestricted telemarketing" is "an intrusive invasion of privacy" and that "[c]onsumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers"); *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., et al.,* No. 23-1226, slip op. 1 (June 20, 2025) ("The TCPA protects businesses and consumers from intrusive telemarketing communications."). With the TCPA, "Congress aimed to curb telemarketing calls to which consumers did not consent by prohibiting such conduct and creating a statutory scheme giving damages if that prohibition was violated." *Van Patten*, 847 F.3d at 1043.

The TCPA consists of two subsections, each of which contains a private right of action: (1) Section 227(b), the automated telephone equipment provision, and (2) Section 227(c), the do-not-call provision. First, Section 227(b), the automated telephone equipment provision, prohibits calls "using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service" or "to any residential telephone line[.]" 47 U.S.C. § 227(b)(1)(A)–(C); *see also* 47 U.S.C. § 227(b)(3) (providing a private right of action to seek injunctive relief and statutory damages up to $500 per unlawful

automated call). Second, Section 227(c) the do-not-call provision, titled "protection of subscriber privacy rights," gives broad authority to the FCC to "evaluate alternative methods and procedures" including "'do not call' systems" "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to promulgate rules and regulations to implement that protection. 47 U.S.C. § 227(c)(1)(A)–(E); *see also* 47 U.S.C. § 227(c)(5) (providing a private right of action to seek injunctive relief and statutory damages up to $500 per do-not-call violation).

    A.    *The Do-Not-Call Provision, Section 227(c)*

In 2003, in response to Congress's instruction, the FCC created the Do-Not-Call Registry which allows a consumer to opt out of receiving marketing calls by placing their phone number on a national registry. *See* 47 C.F.R. § 64.1200(c)(2) ("No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]").

The do-not-call provision expressly applies to "residential telephone subscribers." *See* 47 U.S.C. § 227(c)(1) and 47 C.F.R. § 64.1200(c)(2). But the TCPA does not define "telephone subscriber" or "residential telephone subscriber." And unlike Section 227(b), Section 227(c) does not contain language that refers to "cellular telephone service."

1.  *The FCC's 2003 Interpretation*

In 2003, the FCC issued a rule that "wireless subscribers" were presumptively "residential subscribers" under the do-not-call provision and that wireless subscribers could register for the national do-not-call database. *See* 2003 TCPA Report and Order, 18 FCC Rcd. 14014, 14039 and n.139 (2003) [hereinafter "2003 TCPA Report and Order"] ("[W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'").

The FCC found that "wireless subscribers often use their wireless phones in the same manner in which they use their residential wireline phone[,]" *id.* at 14038, and that "there is a growing number of consumers who no longer maintain wireline phone service, and rely only on their wireless telephone service[,] *id.* at 14039. The FCC concluded that because "Congress has indicated its intent to provide significant protections under the TCPA to wireless users" *id.* at 14037–38 and n.131, "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections[,]" *id.* at 14039.

2.  *Ninth Circuit Precedent*

Deferring to the 2003 FCC interpretation, the Ninth Circuit held that a cell phone is presumptively a residential phone under Section 227(c)—even a cell phone that is used for both personal and business uses. *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022) ("[P]laintiffs' [mixed-use cell] phones are presumptively residential for purposes of § 227(c)" but "[d]efendants may overcome

Page 6 – OPINION AND ORDER

the presumption by showing that plaintiffs use their cell phones to such an extent and in such a manner that the presumption is rebutted").

3. *Controlling Law*

Defendant argues that "neither the 2003 FCC Order nor the *Chennette* decision controls[]" here. Def. Mot. at 10. As to the 2003 FCC Order, Defendant maintains that *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) "overturned prior law 'demand[ing] that courts mechanically afford *binding* deference to agency interpretations[]'" and that this Court, instead, must "'independently interpret the statute.'" Def. Mot. at 14 (quoting *Loper Bright*, 603 U.S. at 399, 400) (emphasis in *Loper Bright*). Defendant further argues that the 2003 FCC Order is wrong because the Commission improperly "reli[ed] on § 227(b) to expand liability under § 227(c)[.]" *Id.* at 11. As to Ninth Circuit precedent, Defendant argues that *Chennette*, which predates *Loper Bright*, does not bind this Court because the Ninth Circuit in *Chennette* "did not construe § 227(c) but deferred entirely to the FCC's interpretation[.]" *Id.* at 14 (citing *Chennette*, 50 F.4th at 1225).

In *Loper Bright*, which overturned *Chevron* deference, a court "need not . . . defer to an agency interpretation of the law simply because a statute is ambiguous[,]" as here. *Loper Bright*, 603 U.S. at 413. And under *McLaughlin*, No. 23-1226, slip op. 4, a district court is not precluded by the Hobbs Administrative Orders Review Act, 28 U.S.C. § 2341 *et seq.*, from reviewing an agency's statutory interpretation in a TCPA enforcement proceeding, as here. Instead, "[i]n an enforcement proceeding, a

Page 7 – OPINION AND ORDER

district court must independently determine for itself whether the agency's interpretation of a statute is correct." *Id.* at 7.

Although this Court is not bound by the FCC interpretation that a cell phone is presumptively a residential telephone, the Court must "afford[] appropriate respect to the agency's interpretation." *McLaughlin*, 2025 WL 1716136, at *8 (citing *Loper Bright,* 603 U.S. at 402). Under *Skidmore*, which predated *Chevron* deference, a court may give an agency judgment "great weight" that "'depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore v. Swift & Co*, 323 U.S. 134, 140 (1944)). And, as *Loper Bright* explains, a court may even apply "deferential review upon concluding that a particular statute empowered an agency to decide how a broad statutory term applied to specific facts found by the agency." *Id.*

B.    *Statutory Interpretation*

Defendant argues that, based on "a plain reading of the statutory text[,]" "the TCPA's do-not-call provision applies only to 'residential telephone subscribers,' not [to] cell phone users like Plaintiff." Def. Mot. at 2. Defendant argues that "[t]he TCPA treats calls to *residential* and *cellular* phone lines as distinct, and [that] the terms are not used interchangeably." *Id.* at 7 (emphasis in Defendant's motion). Defendant points to Section 227(b), which addresses both "cellular phone service" and "residential telephone lines," and argues that because Section 227(c) refers only to

"residential telephone subscribers" without mention of "cellular phone subscribers," that "Congress 'intentionally and purposely' excluded . . . cellular phone users from [that section,]" *id.* (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (emphasis in Defendant's motion).

The Court disagrees. "It is well settled that the starting point for interpreting a statute is the language of the statute itself." *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987). And "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 809 (1989).

First, in arguing that a cell phone is not a residential telephone under the TCPA, Defendant relies on a strained apples-to-apples comparison of Sections 227(b) and 227(c). But the statute's plain language and structure shows that the sections are not comparable. Section 227(b), titled "Restrictions on use of automated telephone equipment," lists the telephone *technologies* used to generate and transmit the telemarketing calls that Congress found intrusive. That section expressly restricts "any call" generated by "any automatic telephone dialing system" or "artificial or pre-recorded voice" technology and transmitted via other technologies

such as "a paging service," "cellular telephone service," "radio common carrier service," "residential telephone line," "emergency telephone line," and "two or more telephone lines of a multi-line business[.]" 47 U.S.C. § 227(b)(1)(A)–(D). But Section 227(c), titled "Protection of subscriber privacy rights," focuses not on the equipment used to generate and transmit calls but on end-user protections. Section 227 grants the FCC broad authority to fact-find, "to evaluate alternative methods and procedures" including "'do not call' systems," "to protect residential telephone subscribers' privacy rights" and to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(A)–(E). Unlike Section 227(b), Section 227(c) makes no mention of automated equipment or transmission technologies. The two sections are thus not comparable in scope or structure.

In trying to equate the two sections, Defendant argues that "residential telephone subscribers" in Section 227(c) means "landlines." Def. Mot. at 3. But, unlike Section 227(b), Section 227(c) does not refer to any kind of transmission technology; it does not refer to "residential telephone *line*" or "landline" or "line." And Congress knew how to denote line-transmission technology because it did so in Section 227(b). "Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a 'residential telephone *line*,' as Congress used that term in the preceding subsection." *Jackson v.*

Page 10 – OPINION AND ORDER

*Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *6 (M.D. Pa. Jan. 17, 2024) (emphasis in original). "Section 227(c) . . . has a markedly different scope and structure [than Section 227(b)]." *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 201 (S.D.N.Y. 2024). Because the two sections are not comparable in scope or structure, they cannot be compared apples-to-apples as Defendant argues.

Second, Defendant's interpretation conflicts with the plain language of the statute. "[A] fundamental canon of construction provides that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Wilderness Soc'y*, 353 F.3d at 1060 (quoting *Perrin v. United States*, 444 U.S. 37, 41 (1979)). Defendant argues that the phrase "residential telephone subscribers" means residential landlines, but Defendant's interpretation does not conform with the ordinary, contemporary, and common meaning of "residential telephone subscribers." In 1991, when the TCPA was enacted, a subscriber was defined as one who "agree[s] to receive a periodical or service regularly[]." *Subscribe/Subscriber*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (9th ed. 1989). Subscription was defined as "an arrangement for providing, receiving or making use of something of a continuing or periodic nature on a prepayment plan." *Subscription*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (9th ed. 1989). The current definition of "subscriber" is substantially the same: "A person who makes a regular payment in return for . . . access to a commercially provided service." *Subscriber*, OXFORD ENGLISH DICTIONARY (2024), https://www.oed.com. So, the

Page 11 – OPINION AND ORDER

ordinary, contemporary, and common meaning of a "telephone subscriber" is an individual who makes regular payments to *use* telephone service on an ongoing basis.

"Residential" modifies "telephone subscribers." In 1991, Websters defined "residential" as "used as a residence or by residents." *Residential*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY. So, "residential telephone subscribers," refers to individuals, subscribers, who make regular payments to *use* telephone service at home, that is, people who use a telephone for a personal or private purpose—a *use* traditionally tied to the home—as opposed to a commercial or business use. "According to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential purposes . . . *i.e.*, for personal activities associated with his or her private, domestic life.'" *Lirones v. Leaf Home Water Sols., LLC,* No. 5:23-CV-02087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024) (quoting *Cacho*, 739 F. Supp. 3d at 206).

Further, elsewhere in the TCPA, Congress spoke to differences in telephone *use* regardless of transmission technology. The TCPA distinguishes business telephone *use* from residential telephone *use*. *See* 47 U.S.C. § 227(a)(2)(A) (defining "established business relationship," as "a relationship between a person or entity and a *business subscriber* subject to the same terms . . . [as] a relationship between a person or entity and a *residential subscriber*[.]") (emphasis added). Notably, the TCPA refers to business telephone use (business subscriber) only in Section 227(b)— the section that lists both cellular service and line transmission. Congress thus contemplated two different telephone uses—business use and residential use—and

Page 12 – OPINION AND ORDER

did not equate a specific telephone use with a specific transmission technology. Contrary to Defendant's interpretation, Section 227(c)'s reference to "residential telephone subscribers" indicates a specific *use*, a personal or private use, not a specific transmission technology.

Third, Defendant's interpretation of Section 227(c) conflicts with the express aim of the TCPA and of Section 227(c). "Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme." *United States v. Lewis*, 67 F.3d 225, 228–29 (9th Cir. 1995) (citing *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990)). The TCPA was enacted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home[.]" S. Rep. No. 102–178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968. Congress found that "[t]he use of automated equipment to engage in telemarketing is generating an increasing number of consumer complaints[,]" *id.*, that "automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons[]" because they are unresponsive to the call recipient, *id.* at 4, and that "[c]onsumers are especially frustrated because there appears to be no way to prevent these calls[,]" *id.* at 1.

The do-not-call provision's sole and express aim is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Courts have long recognized the importance of residential privacy interests. *See, e.g., Frisby v. Schultz,* 487 U.S. 474, 484 (1988) ("The State's interest

Page 13 – OPINION AND ORDER

in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society. Our prior decisions have often remarked on the unique nature of the home . . . and have recognized that preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value.") (cleaned up); *see also* S. Rep. No. 102–178, at 4 ("The Supreme Court also has recognized that 'in the privacy of the home, . . . the individual's right to be left alone plainly outweighs the First Amendment rights of an intruder.'") (quoting *FCC v. Pacifica Found.*, 438 U.S. 726, 748 (1978)). Defendant's interpretation would protect the privacy interest of a home landline subscriber but not a home cellular subscriber—even when a cell phone is the sole phone for home use, as is increasingly the case. Defendant effectively ties residential privacy interests to an obsolete and disappearing transmission technology. But "[t]hose privacy interests do not depend upon whether the undesired telephone solicitations are received on a cellular phone [or] a landline." *Lyman v. QuinStreet, Inc.*, No. 23-CV-05056-PCP, 2024 WL 3406992, at *4 (N.D. Cal. July 12, 2024). There is no evidence that a call or message transmitted by a cell tower is less intrusive than a call or message delivered by a land line. Defendant's attempt to define away the privacy interests that Congress specifically sought to protect yields an absurd result. *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013) (cleaned up) ("'Statutory interpretations which would produce absurd results are to be avoided.").

Page 14 – OPINION AND ORDER

Finally, under *Loper Bright*, when Congress expressly empowers an agency to decide how to apply a statutory term to specific facts found by the agency, the agency interpretation is entitled to "deferential review." *Loper Bright*, 603 U.S. at 388.  Here, Congress, in Section 227(c), broadly authorized the FCC to fact-find within the scope of its expertise and to "evaluate alternative methods and procedures," including "'do-not-call' systems" "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(A)–(E).  Accordingly, the FCC determined, based on its findings, that to give proper meaning to the statutory text and to effect Congress's aim, cell phone users are presumptive residential telephone subscribers who may take part in the Do Not Call Registry.  That interpretation is due special deference under *Loper Bright*.  And, even without the special "deferential review" described in *Loper Bright*, the Court gives great weight, under *Skidmore* deference, to the FCC's interpretation because it was based on factual findings within the FCC's expertise, was thoroughly considered, validly reasoned, and consistent with the FCC's earlier and later pronouncements.

In sum, without deferring to the FCC, the Court independently concludes that the FCC got it right.  Given the text, structure, and purpose of Section 227(c) and of the TCPA as a whole, a cell phone is presumptively a residential telephone under the TCPA do-not-call provision, Section 227(c).

II.  Sufficiency of the Pleading

The TCPA provides a private right of action for do-not-call violations. *See* 47 § 227(c)(5) ("A person [with a registered telephone number] who has received more than one telephone call within any 12-month period by [a violating entity] may . . . bring . . . an action . . . to enjoin such violation, [or] . . . to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, . . . or both[.]").

Plaintiff alleges that he placed his cell phone number on the Do Not Call Registry and that Defendant sent him at least three marketing texts in the next 12 months. Plaintiff also alleges that he does not have a home landline, that his cell phone is his residential telephone that he uses for "personal and household purposes" as he would use a home landline and that a business does not pay his cell phone bill. Plaintiff thus sufficiently pleads a claim under § 227(c)(5) of the TCPA. Accordingly, the Court denies Defendant's 12(b)(6) motion to dismiss for failure to state a claim.

III.  Alternative Motion to Stay the Case

In the alternative, Defendant moves to stay this case pending the United States Supreme Court decision in *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., et al.,* No. 23-1226 (June 20, 2025). Def. Mot. at 16–17. The motion to stay the case is denied as moot because the Supreme Court recently decided *McLaughlin* and it was considered in this opinion.

## CONCLUSION

For the reasons explained above, the Court DENIES Defendant's Motion to Dismiss and alternative Motion to Stay the proceeding, ECF No. 13.

It is so ORDERED and DATED this  27th  day of June 2025.

 /s/Ann Aiken  
ANN AIKEN  
United States District Judge

Page 17 – OPINION AND ORDER