IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,<br><br>  Plaintiff<br><br>vs.<br><br>RISEUP FINANCIAL GROUP, LLC<br><br>  Defendant. | Case No. 25-cv-1402 |

**PLAINTIFF'S OPPOSITION TO THE MOTION TO STRIKE CLASS ALLEGATIONS**

# Table of Contents

1.  Introduction ................................................................................................................ 4

2.  Background ................................................................................................................ 4

3.  Argument ................................................................................................................... 5

   a.  The Motion is Procedurally Improper, as this Court has Already Found in Response to a Similar Motion Filed by the Same Law Firm. ............................................................... 5

   b.  The Plaintiff and Other Class Members have Claims if their Residential Cellular Telephone Number Received Text Messages. ........................................................................ 6

   c.  Striking Class Allegations without Discovery is Premature and the Plaintiff's Class Definition is Not Overbroad. ................................................................................................ 7

   d.  The Plaintiff's Class Definition Should not be Stricken because of Potential Affirmative Defenses. ........................................................................................................... 11

   e.  Individuals do not have to Personally Register their Numbers on the National Do Not Call Registry. ............................................................................................................... 14

   f.  For nearly identical reasons, there exist common questions of law or fact applicable to the class. ........................................................................................................................ 15

4.  Conclusion ............................................................................................................... 17

# Table of Authorities

*Cases*

*Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-cv-6314-YGR, 2017 WL 1806583, at *7 (N.D. Cal. May 5, 2017) ............... 10

*Baccari v. Carguard Admin., Inc.,* 2022 U.S. Dist. LEXIS 140853 (E.D. Pa.). ............... 5

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019) ............... 11

*Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015) ............... 11

*Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717 (W.D. Tex. Oct. 18, 2022) ............... 13

*D.G. v. William W. Siegel & Assocs.,* 791 F. Supp. 2d 622 (N.D. Ill. 2011) ............... 14

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ............... 6

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). ............... 7

*Jackson v. Meadowbrook Fin. Mortg. Bankers Corp.,* No. 4:22-CV-01659, 2023 U.S. Dist. LEXIS 41211, at *7 (M.D. Pa. Mar. 10, 2023) ............... 8

*Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185 (D. Colo. Nov. 14, 2023) ............... 14

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ............... 4

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019). ............... 4

*Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72 (3d Cir. 2011) ............... 6

*Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-95 & n.30 (3d Cir. 2011) 6

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ............... 11

*Olney v. Progressive Cas. Ins. Co.,* 993 F. Supp. 2d 1220 (S.D. Cal. 2014) ............... 14

*Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) ............... 7

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278 (N.D. Iowa June 9, 2022) ............... 13

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020). ............... 10

*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690 (N.D. Ohio Dec. 1, 2014) .................................................................................................. 15

*Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014) .......................................................................................................................................... 11

*See e.g. Johnson v. Comodo Grp., Inc.*, No. 16-4469 (SDW) (LDW), 2020 U.S. Dist. LEXIS 18033, at *25-27 (D.N.J. Jan. 31, 2020) ................................................................................ 8

*Warnick v. Dish Network LLC*, 301 F.R.D. 551 (D. Colo. 2014) ............................................... 12

*Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500 (S.D.N.Y. 2014). ................................................. 11

**Statutes**

**47 U.S.C. § 227(c)(5)** ................................................................................................................ 15

**Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991)** _ 4

**Regulations**

**16 C.F.R. § 310.4(b)(iii)(B)** ......................................................................................................... 5

**47 C.F.R. § 64.1200(c)(2** ..................................................................................................... 4, 14

**47 C.F.R. § 64.1200(c)(2)** .......................................................................................................... 4

3

1.      **Introduction**

The Court should deny Defendant RiseUp Financial Group LLC's ("RiseUp" or "Defendant") motion to strike class allegations (ECF No. 21) because the Plaintiff's proposed class definition is by no means overly broad. Moreover, the class, alleging illegal calling conduct arising out of scripted text message marketing campaign, is the hallmark of commonality, as courts have held with respect to similar TCPA class actions. Multiple courts across the country have rejected identical arguments to here that a class like the one proposed here should be stricken because they are allegedly uncertifiable. Defendant's motion should therefore be denied in its entirety.

2.      **Background**

"Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9). "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16

C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019). Plaintiff Jourey Newell ("Plaintiff") brings this action under the TCPA alleging that RiseUp Financial Group, LLC contacted the Plaintiff, whose number is on the National Do Not Call Registry. Due to the *en masse* nature of the calling at issue, the Plaintiff has filed this action on behalf of the following class:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call, text message, or combination thereof, from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

*See* First Amended Complaint (ECF No. 17) at ¶ 42.

### 3.    Argument

**a.    The Motion is Procedurally Improper, as this Court has Already Found in Response to a Similar Motion Filed by the Same Law Firm.**

In denying a similar motion filed by the same lawyers that represent the Plaintiff here, Judge Beetlestone had held:

> As an initial matter, Carguard's Motion to Strike pursuant to Federal Rule of Civil Procedure is untimely because it falls afoul of Federal Rule of Civil Procedure

5

>  12(g)(2), which provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes *a motion under this rule* must not make *another motion under this rule* raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12 (emphasis added); *see also Jaroslawicz v. M&T Bank Corp.*, 912 F.3d 96, 105 n.4 (3d Cir. 2018), *reh'g granted, judgment vacated on other grounds*, 925 F.3d 605 (3d Cir. 2019) (stating that Rule 12(g) "prohibits a party from making a successive motion to dismiss if that motion 'rais[es] a defense or objection that was available to the party but omitted from its earlier motion'" (quoting Fed. R. Civ. P. 12(g)(2))). The purpose of the Rule is "to prevent [] dilatory motion practice . . . a course of conduct that was pursued often for the sole purpose of delay." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1384 (3d ed. 2022); *see also Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) (noting that the purpose of Rule 12(g) is "simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics"). Consequently, "the right to raise [Rule 12] defenses [and objections] by preliminary [*4] motion is lost when the defendant neglects to consolidate them in his initial motion." Wright & Miller, *supra* at § 1385.
>
>  A motion to strike is "a motion under" Rule 12; specifically, a motion to strike is one made under Rule 12(f). *See* Fed. R. Civ. P. 12(f); *see also* Wright & Miller, *supra* at § 1388 ("Motions to strike . . . are motions under Rule 12 and thus clearly are within the language of subdivision (g)."). Because Carguard filed a separate motion to strike *after* it already filed a motion to dismiss pursuant to Rule 12(b)(6), it has failed to comply with Rule 12(g)'s mandate to consolidate all motions "available to [it]" into a single motion.

*Baccari v. Carguard Admin., Inc.,* 2022 U.S. Dist. LEXIS 140853, *3-4 (E.D. Pa.). This Court should hold the same.

> **b.    The Plaintiff and Other Class Members have Claims if their Residential Cellular Telephone Number Received Text Messages.**

As its primary argument, the Defendant recycles its motion to dismiss claiming that a cellular telephone can never be a residential number. However, as alleged in Plaintiff's First Amended Class Action Complaint (ECF No. 17), Plaintiff is a residential subscriber of his cellular telephone number because he uses his cellular phone number exclusively for personal and household purposes. Indeed, residential subscribers of cellular telephone numbers are

6

entitled to the protections of the Telephone Consumer Protection Act's National Do Not Call Registry provision under the statute's plain language because the term "residential telephone subscriber" encompasses all types of telephone lines (landline and cellular) so long as they are used for personal purposes. The Plaintiff incorporates his argument on this issue from his opposition to the motion to dismiss (ECF No. 25) as these issues should have been briefed in one motion, as described above.

### c.     Striking Class Allegations without Discovery is Premature and the Plaintiff's Class Definition is Not Overbroad.

Significantly, "because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) and it will be discovery that addresses the Plaintiff's allegations as the Third Circuit explained in a TCPA case, *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-95 & n.30 (3d Cir. 2011) (holding that a court may deny class certification before discovery only if the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," and explaining that "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues). In essence, RiseUp asks this Court to hold as a matter of law that a TCPA class is not ascertainable. As the Fourth Circuit explained:

> In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer*, 925 F.3d at 656 (noting that "the TCPA clearly supports class-wide resolution"). Indeed, courts around the country have certified numerous class actions based on violations of the TCPA. Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context:

> Jurists and commentators have long debated the merits of the modern class action and the public policies behind Rule 23…It is the view of this Court that the instant case highlights one of the strongest justifications for the class action device: its regulatory function…A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute.

*Bee, Denning, Inc. v. Capital Alliance Group*, No. 13-cv-2654, 2015 U.S. Dist. LEXIS 129495, at *37-38 (S.D. Cal. Sept. 24, 2015). At bottom, given that courts regularly certify TCPA class actions, Defendant's suggestion that the Plaintiff cannot meet the elements necessary to certify his proposed TCPA class is not credible.

A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions to determine whether someone is in the class, one simply needs to answer questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015) (internal annotations omitted). Contrary to what Defendant argues, to determine class membership in this case the Court will ask the following series of objective, factual questions:

- Did RiseUp make calls to numbers on the National Do Not Call Registry?

- Were those numbers called 2 or more times in a 12 month period?

- Were those numbers "residential"?

- Does Defendant claim to have obtained consent to call them in the same manner Defendant claims to have obtained consent to call Plaintiff?

*See id*. at *8-9 (finding that the plaintiff's proposed Class were not fail safe because "one simply needs to answer questions such as whether the person received a certain number of phone calls from Defendants within a certain timeframe").

Similarly, this Court should not hold as a matter of law that a TCPA class is not ascertainable. Indeed, identifying class members in a TCPA case is simply a matter of expert work as other Courts in this Circuit have found when certifying a TCPA case. *See e.g. Johnson v. Comodo Grp., Inc.,* No. 16-4469 (SDW) (LDW), 2020 U.S. Dist. LEXIS 18033, at *25-27 (D.N.J. Jan. 31, 2020). In rejecting a similar argument previously in a TCPA case, the Middle District of Pennsylvania rejected an identical argument over the same class definition proposed here in *Jackson v. Meadowbrook Fin. Mortg. Bankers Corp.,* No. 4:22-CV-01659, 2023 U.S. Dist. LEXIS 41211, at *7 (M.D. Pa. Mar. 10, 2023) (footnotes omitted):

> Meadowbrook directs this Court to a 2015 ruling by the Honorable Stewart R. Dalzell of the United States District Court for the Eastern District of Pennsylvania in *Zarichny v. Complete Payment Recovery Services, Inc*. There, the plaintiff brought a putative class action under the TCPA on behalf of herself and similarly situated individuals who received one or more calls on their personal cell phones from the defendants using an automatic telephone dialing system without prior consent. Judge Dalzell concluded that the class was an impermissible fail-safe class because "there is no way to provide notice to that putative class without the [*8] sort of extensive fact-finding that class actions should avoid," and "at the conclusion of the litigation, should [the defendant] prevail against [the plaintiff], any other putative class recipient would be free to litigate the same claim against [the defendant]."
> Nine months after his ruling in *Zarichny*, Judge Dalzell confronted a similar question—but reached a different result. In *Abella v. Student Aid Center, Inc.*, as in *Zarichny*, the defendant moved to strike the class allegations relating to violations of the TCPA, arguing that "the class definition proposed by the plaintiff was an impermissible 'fail-safe' class."**37** But Judge Dalzell concluded that the proposed class in *Abella* did not "meet[] the definition of a fail-safe class," highlighting two distinctions between the proposed classes in *Abella* and *Zarichny*: (1) unlike the proposed class in *Zarichny*, the *Abella* class "makes no reference to [the defendant's] use of an automatic telephone dialing system[,] . . . which is a required element for a claim under the TCPA"; and (2) the plaintiff in *Abella* did not "rely[] on potential class members' word when determining whether they gave [the defendant] consent to send them text messages," relying instead [*9] on the

9

> defendant's "internal records that detail whether it received consent to text certain phone numbers."
> Since 2015, district courts within this circuit have consistently emphasized the latter distinction Judge Dalzell highlighted in *Abella*. For example, in *Johnson v. Ally Financial Inc.*, my colleague, the Honorable Christopher C. Conner, declined to strike class allegations concerning the following proposed class: "all persons in the United States who received a call from [the defendant] with the aid of an automatic telephone dialing system when [the defendant's] business records do not indicate it received prior consent."**39** Judge Conner held that this proposed class was not a "facially uncertifiable" fail-safe class because it was properly defined with reference to objective, factual criteria—i.e., the defendant's "business records [that] may (with discovery) reveal an ascertainable []class"—that fall "outside of the legal requirements of the [TCPA]."…
> Here, Jackson argues that like the plaintiffs in *Abella, Johnson, O.P. Schuman*, and *Shelton*, he elided the fail-safe concern present in *Zarichny* by making the "conscious decision to not include language about individuals who have not provided their 'prior express written consent' in the class definition." The Court agrees. The issue of whether Meadowbrook's "conduct constitutes a violation of the TCPA" is arguably a question of law and fact common to Jackson and the other proposed class members. But that alone does not render the proposed class fail-safe. The question here is whether Jackson's proposed class is defined with reference to objective, factual criteria that fall "outside of the legal requirements of the [TCPA]." Consistent with prior district court rulings in this circuit, the Court finds that it may well be.

This Court should hold the same deny the motion and similarly reject the Defendant's issue with the use of telephone solicitation and residential telephone subscribers, which are simply terms that are used to differentiate between marketing texts versus informational one and personal telephone uses as opposed to business ones. While both terms have ordinary and plain meaning, separate words can be used if needed, striking the entire class allegations is unnecessary.

Finally, RiseUp's claim that it will be impossible to certify the class because it will be impossibly to identify what individuals were called "on behalf of" RiseUp is also premature. Again, it will be discovery that will determine which calls third parties made for RiseUp or not, and the contours of the class definition can be adjusted appropriately. However, to claim that it is impossible to certify such a class ignores the cast law that a defendant's potential vicarious liability for telemarketing calls is a common question among class members. *See, e.g., Abante*

10

*Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, No. 15-cv-6314-YGR, 2017 WL 1806583, at *7 (N.D. Cal. May 5, 2017) (finding whether defendant was vicariously liable for calls made by an entity it contracted with was a common question and certifying claims under the TCPA). It is also possible that RiseUp will not assert that the third parties used to make calls, if any, were independent contractors. The Plaintiff's use of "on behalf of" also addresses the potential scenario that the Defendant, like many businesses, simply outsourced telemarketing to a separate entity other than the corporation.

    **d. The Plaintiff's Class Definition Should not be Stricken because of Potential Affirmative Defenses.**

  As to the issues of consent, it is true that some courts have previously struck class allegations in TCPA cases where the lack of consent was pled as part of the class definition. It is also true that consent under the TCPA at the time of the alleged calls could have been tendered to a third party. However, it is important to note that the cases cited by the Defendant had class allegations struck at the pleadings stage for precisely that reason: the class definition included some variation of the language that required each class member have not provided their consent. RiseUp's argument focuses on a potential affirmative defense of consent or established business relationship (of which they've produced no evidence to support) to assert that the action in its entirety is incapable of being maintained as a class action. In rejecting the same argument previously in a TCPA case, another Court held:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.

*Rosenberg v. LoanDepot.com LLC,* 435 F. Supp. 3d 308, 318 (D. Mass. 2020).

Even though Mr. Newell does not believe that RiseUp obtained the appropriate prior express written consent for its calls with the called party because it was a current customer or established business relationship (as the calls were designed to solicit new business), the Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have found that* to be an impermissible fail-safe class in TCPA cases. In *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8-9 (S.D. Ohio May 7, 2014), a court held that a TCPA plaintiff needed to amend his class definition because he included that language in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class…However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant.  [*24] This is the definition of a prohibited fail-safe class.

Other courts agree. *See e.g. Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015). Here, the Plaintiff avoided that potentially fatal flaw in drafting. Nor does the determination of the consent issue necessitate thousands of individual mini-trials as the Defendant claims. Courts do not see consent issues as problematic from a class certification perspective, particularly when there are uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019), *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012), *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). The *TD Bank* and *Warnick* cases cited by the Defendant on this point are thus distinguishable. In *TD Bank*, the case revolved around issues of

12

what individuals may have called to *revoke* consent and whether or not each consumer's method of revocation was "reasonable." *Martinez v. TD Bank USA, N.A.*, No. CV 15-7712(JBS/AMD), 2017 WL 2829601, at *5 (D.N.J. June 30, 2017). In *TD Bank*, the plaintiff also happened to adopt a flawed class definition predicated on whether the defendant had the plaintiff's "prior express consent." *Id.* at *12.

Similarly, in *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 557 (D. Colo. 2014), the court held that a proposed class was unascertainable based on a twice-revised class definition that had started out pleading a revocation of consent and ended with an internal list of anomalies called a "TCPA Tracker." In sum, the issues of consent in this case, if there are any, will be easily ascertained and resolved long before class certification. In any event, given that no consent defense has been put forth, let alone any evidence to analyze whether such problems exist, it would be premature to strike the class allegations at the pleadings stage on this basis. Indeed, the same argument applies for RiseUp's "reconsented" argument, since this is again just an affirmative defense of consent. Similarly, LoanDepot's argument that using a prerecord voice is vague should also fail.

Second, the class definition is not overly broad because it deals with the consent issue through an analysis of the Defendant's very own records. Mr. Newell seeks to represent a class defined in part by information readily available in Defendant's internal records: whether or not they received a call from the Defendant and whether or not they provided their number to the Defendant beforehand. Provided that Defendant has records of whom it sent messages, and a record of whether or not they simply cold-called that person or instead had an inquiry or written permission, they will not have to take a putative class member's say-so that he received a call or

that he didn't consent. Thus, the class is not overly broad, but rather will be accurately ascertained and notified long before the jury returns a verdict.

### e. Individuals do not have to Personally Register their Numbers on the National Do Not Call Registry.

Nor does the possibility that some class members may not have personally registered their numbers on the National Do Not Call Registry render the class at all unascertainable or overly broad. Defendant's *sole* case in support of its proposition that a subscriber must personally register their number on the Registry is *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), a case from the Northern District of Iowa holding that a plaintiff must *personally* register their number on the Do Not Call Registry. Relying on *Rombough*, the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s.

*Rombough* has been rejected by a multitude of courts, most notably in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the argument underlying the *Rombough* decision one that "borders on the frivolous." The *Callier* court went on to state:

> *Rombough's* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals who have requested that telemarketers not contact them. While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how

14

> infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the DNC.

*Id.* at *6 (cleaned up). *Rombough* also ignores the fact that the subscriber *or regular user* of a telephone line has standing under the TCPA. *D.G. v. William W. Siegel & Assocs.,* 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) ("Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a "called party" under the TCPA."); *Olney v. Progressive Cas. Ins. Co.,* 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014) ("Defendant seeks to arbitrarily limit standing to only the individual whose name appears on the bill. Notably, Defendant does not cite a single case to support this position. Further, this position has been rejected by other courts."). This is notwithstanding the fact that the plain text of the TCPA's DNC standing provision allows any "person who has received" a call in violation of the FCC's regulations to sue. 47 U.S.C. § 227(c)(5).

Other courts have similarly rejected the *Rombough* court's approach, including at class certification and in refusing to strike class allegations. *See, e.g.*, *Watson*, 2022 WL 4586407, at *9 (holding that "whether each class member registered their number on the NDNCR is irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023) (refusing to strike class allegations and reformulating class definition). As a result, there is no requirement that an individual personally register their number on the Do Not Call Registry and this Court need not even consider the issue when determining whether to strike the class allegations at the pleadings stage.

> **f.    For nearly identical reasons, there exist common questions of law or fact applicable to the class.**

None of the issues raised above defeat commonality as the Defendant claims. Courts routinely certify TCPA class actions of this sort, including class actions where there are disputed

15

issues of consent. The commonality requirement dictates that the case have "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The bar for demonstrating commonality is low and does not require that all class members have perfect identify of questions of law or fact. Indeed, "even a single common question will do." *Wal-Mart*, 564 U.S. at 359. The Plaintiff must only demonstrate that there is a common question central to the validity of the class's claims, the "truth or falsity" of the common answers to them will resolve the claims "in one stroke." *Id.* at 350. For the reasons below, this case will satisfy this requirement.

Although consent *might* become an issue in this class action, such contentions do not require an individualized inquiry. The fact of consent, together with its legal effectiveness, are issues capable of classwide resolution since consent under the TCPA must meet certain requirements. For starters, if the legal requirements for consent are not satisfied, for example by using legally insufficient language on a website used to obtain consent, every class member would not have provided legally sufficient consent and consent becomes a nonissue. Similarly, the alleged vagueness and other perceived infirmaries regarding the class definition simply do not exist.

However, because all the telephone calls here originated from the same place, the success and legal sufficiency of the affirmative defense of consent is necessarily a common question with common answers. TCPA cases are routinely certified as common, even when there is evidence of consent, because such cases involve a singular legal question based on a singular set of records, as here. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014) (discussing remarkable commonality of TCPA cases). Indeed, as described above, the Defendant's own internal books and records will be used by the Court or jury to craft a uniform, objective answer to a common question: did any

class member provide their telephone number to the Defendant, as reflected in the Defendant's own records? If yes, they are out of the class; if no, they are in the class.

### 4.      Conclusion

The Court should therefore deny the Defendant's motions to strike class allegations in all respects.

RESPECTFULLY SUBMITTED AND DATED this July 20, 2025.

By: */s/ Anthony I. Paronich*
Anthony I. Paronich *Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com