# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOUREY NEWELL**, individually and on behalf of a class of all persons and entities similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **RISEUP FINANCIAL GROUP, LLC,** <br><br> Defendant. | Case No. 2:25-cv-01402-JFM <br><br> District Judge John F. Murphy |

## DEFENDANT RISEUP FINANCIAL GROUP, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**MEMORANDUM OF LAW**

I. **INTRODUCTION**

Plaintiff's Opposition to Defendant RiseUp Financial Group, LLC's ("RiseUp") Motion to Dismiss fails to address the fundamental flaw in his case: the claims asserted are not supported by the plain language of the Telephone Consumer Protection Act's Do-Not-Call provisions. Section 227(c) applies exclusively to residential telephone subscribers who receive telephone solicitations; it neither covers text messages nor extends protection to cellular subscribers.

Despite Plaintiff's efforts to characterize his cell phone as "residential," the statute's text, structure, and legislative history clearly limit this section to traditional home landline subscribers. Plaintiff cannot rewrite the statute by relying on FCC guidance or shifting usage norms – particularly not in the wake of the Supreme Court's recent decisions in *Loper Bright* and *McLaughlin*, which make clear that courts must independently interpret statutory language without deference to agency interpretation.

As such, the clear statutory language supports granting RiseUp's request to dismiss Plaintiff's First Amended Complaint.

II. **PLAINTIFF'S ATTEMPT TO RECAST HIS CELL PHONE AS A RESIDENTIAL LINE FAILS.**

Plaintiff misses the mark in his Opposition. Opp. p.9. He argues that the residential nature of the telephone line is clear from the allegations in his complaint, but that argument overlooks the core issue: a cell phone, by its very nature, is not a residential line. It is not tied to a physical residence like a landline and functions fundamentally differently.

The Third Circuit has acknowledged that the TCPA does not define the term "residential," and has interpreted it to refer specifically to landline telephones—explicitly contrasting them with wireless or cellular lines. That reading aligns with the structure of the statute itself, which

1

separately addresses calls and text messages to cell phones, making clear that Congress deliberately distinguished between residential landlines and mobile devices. *See Perrong v. Victory Phones LLC*, No. 20-5317, 2021 WL 3007258, at *7 n.6 (E.D. Pa. July 15, 2021) ("The TCPA does not define 'residential.' The Third Circuit Court of Appeals has interpreted residential to refer to landlines and has juxtaposed those physical lines with wireless ones.") (citing *Gager v. Dell Fin. Servs., LLC*, 757 F.3d 265, 273 (3d Cir. 2013) (The residential telephone line section applies "only to autodialed calls made to land-lines.")). Plaintiff's effort to reframe his mobile device as a residential line simply doesn't hold up under the law or common sense.

### III.   THE DNCR PROVISIONS OF THE TCPA APPLY ONLY TO RESIDENTIAL LANDLINES

A cellular telephone is not a residential telephone regardless of the purposes for which it is used. The plain language of "residential telephone" unambiguously refers to a telephone used in the home. *See Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 n.7 (E.D. Pa. 2019) ("[T]he plain language of 'residential telephone' describes a telephone used by individuals in the home, and not a cellular telephone, which can be used anywhere.").

Plaintiff takes this Court on a legislative history tour to suggest Congress somehow meant "residential" to include mobile phones—but that's not how statutory interpretation works. The statute says what it says, and no amount of selective timelines or policy appeals can rewrite it. Courts interpret statutes using traditional tools of construction, not individual policy preferences. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 374, 14 (2024) ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences."). Congress knew how to say "cell phone" when it wanted to—and did so elsewhere in the TCPA—but in § 227(c), it chose to protect "residential telephone subscribers." That phrase has a plain meaning rooted in the home.

Plaintiff tries to sidestep this by leaning on broad definitions of "residential," but the "ordinary, contemporary, common meaning" of that word does not include a cell phone. *Perrin v. United States*, 444 U.S. 37, 42 (1979). And, under the fixed-meaning canon, "[w]ords must be given the meaning they had when the text was adopted." *Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts* 78 (2012).

Similarly, Plaintiff's reliance on Webster's definitions from 1936 and 2003—defining "residential" as "used as a residence or by residents; adapted to residence or residences"—misses the mark entirely. The contrast between "residential" and "nonresidential" in the dictionary pertains to *location*, not technology. These definitions presuppose a physical, fixed association with a dwelling, not a portable device carried in a pocket. A mobile phone, by definition, is not "used as a residence" nor "adapted to residence"; it is used everywhere—on sidewalks, in offices, at airports—not within or because of its association with a home.

Plaintiff then tries to shift focus by arguing Congress foresaw copper landlines being replaced by mobile or VoIP technologies. But that misses the point: it's not the copper wiring that defines a "residential telephone"—it's the phone's *function* and *placement* within a home. "[Cell phones] are [] inherently mobile." *See United States v. Williams*, No. 2:18-CR-20547-TGB-DRG, 2023 WL 4372687, at *4 (E.D. Mich. July 6, 2023); *Kraeger v. United States*, No. 3:11-CR-00084, 2017 WL 6502478, at *9 (M.D. Pa. Dec. 19, 2017)(same); *Luna v. Shac, LLC*, No. C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014)(same). No matter how often it's used on a couch, it doesn't become "residential" any more than a laptop becomes a kitchen appliance when used in the kitchen. The notion that a cell phone, a device designed for constant mobility, somehow qualifies as a "residential telephone" is not persuasive.

3

Further, Plaintiff's reliance on the regulatory definitions of "residential subscriber" and "business subscriber" under 47 C.F.R. § 64.2305 is misplaced. Those definitions were created before the Do Not Call Registry even existed, and as Plaintiff concedes, they were aimed at distinguishing commercial services—not at classifying cell phones. Being a non-business subscriber doesn't transform a mobile device into a residential telephone. Plaintiff's reading would collapse the distinction Congress clearly drew between residential and other types of lines, stretching § 227(c) beyond its text and purpose. *See Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334, 1342 (S.D. Fla. 2022) (characterizing the inclusion of cell phone subscribers within Section 227(c) as "an unauthorized expansion of the private right of action for violations of the TCPA's do-not-call provision", noting that "when Congress granted the FCC authority to create the DNC Registry via section 227(c)(3), [it] intentionally withheld from the FCC any authority to create a registry that included cellular telephone numbers.").

While Plaintiff's argument relies on a leap that may have been accepted before *McLaughlin*, it no longer holds true today. "In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are **not** bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 145 S. Ct. 2006, 2015 (2025). Respectfully, it is for this Court to construe the applicable statute and determine its application--unbound by the interpretations of any FCC Order.

IV.     <u>**TEXT MESSAGES ARE NOT ACTIONABLE UNDER 227(C)**</u>

If "[w]ords must be given the meaning they had when the text was adopted," *Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts* 78 (2012), then text messages

4

cannot plausibly be considered "telephone calls" under the TCPA. Following *McLaughlin*, a district court squarely addressed this issue and agreed with RiseUp, holding that "[p]ursuant to *McLaughlin* and *Loper Bright* … based on a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does *not* apply to text messages." *Jones v. Blackstone Med. Servs., LLC*, No. 1:24-cv-01074-JEH-RLH, 2025 WL 2042764, at *3 (C.D. Ill. July 21, 2025)(emphasis added).

Plaintiff contends that "every court to decide the issue" post-*Loper Bright* has held that § 227(c) applies to text messages, but this misstates both the holdings and reasoning of the cited decisions. Notably, none of Plaintiff's authorities meaningfully grapple with the threshold statutory question that *Jones* properly addresses: whether a plaintiff who receives a text message to a cell phone has statutory standing under § 227(c), which protects "residential telephone subscribers" from "telephone solicitations." *See Jones*, at *7–8. In contrast, the decisions Plaintiff relies on either presume the issue or defers to FCC interpretations that *McLaughlin* renders no longer binding.

Plaintiff asserts that the "fundamental flaw with Defendant's argument is the contention that the terms 'call' or 'telephone call' are defined by the statute," and insists instead that they be interpreted using their ordinary, contemporary meaning. Opp. at 24. To support this, Plaintiff relies on a litany of pre-*McLaughlin* cases to argue that a text message qualifies as a call under the TCPA. But if that conclusion seems to strain common sense, it's because it does. Plaintiff contends that any communication sent to a phone—including texts—"falls squarely within the definition of the word 'call'" because it is intended to reach someone through their telephone. But if taken at face value, this reasoning would extend the definition of "call" to encompass every type of phone-based

5

communication—texts, emails, app notifications, even Venmo requests. Clearly, that cannot be the law.

Plaintiff's reliance on the ringless voicemail decisions is misplaced. The decisions Plaintiff cited involve audio messages left directly in a recipient's voicemail—functionally indistinguishable from a traditional voice call. Text messages, by contrast, are a written medium, not auditory, and do not implicate the same user experience. The two are not interchangeable simply because they both involve phones. Such logic would mean every form of communication involving a phone-- texts, emails, and even app notifications-- would qualify as a "call." That approach is not only untethered from the statute but also inconsistent with the Supreme Court's guidance in *McLaughlin*, which postdates all of Plaintiff's cited cases and reaffirms the need to read the TCPA narrowly in light of its specific structure and targeted scope.

Plaintiff's attempt to equate "calls" with "messages" under § 227(c) by pointing to the definition of "telephone solicitation" is unavailing. Opp. at 27. While the term "telephone solicitation" includes both "calls" and "messages," § 227(c)(5)—which creates the private right of action—expressly limits liability to the receipt of more than one *telephone call*. Congress could have mirrored the broader definition and included "messages" in the enforcement provision but did not. That omission is dispositive. Courts must presume that when Congress uses narrower language in one part of a statute than another, it does so intentionally. Plaintiff's reading would effectively rewrite § 227(c)(5) to say "call or message," which the Court, respectfully, cannot do.

*Jones* recognized that courts must interpret the TCPA as written, not as expanded by agency rulemaking.

> [T]he phrases "text message" and "SMS message" are wholly absent from Section 227(c)(5) and its implementing regulations, 47 C.F.R. § 64.1200(c) and (d). Indeed, only "call"… appear[s] in Section 227(c) and its implementing regulations 47 C.F.R. § 64.1200(c) and (d)… The Court agrees with the Defendant that based on

6

a plain reading of the TCPA and its implementing regulations, Section 227(c)(5) does not apply to text messages. *Jones*, at *3.

After applying the ordinary, contemporary meaning of "text" the Court in Jones reached the common-sense conclusion that Plaintiff refuses to accept: Section 227(c) does not reach text messages. Rather than contort the statute to match evolving technology, *Jones* stayed grounded in the statutory text—exactly as the Supreme Court in *McLaughlin* requires.

Finally, Plaintiff's appeal to broad remedial purpose can't override plain statutory limits. Where "[a] statute, as written, has not kept up with technology and does not effectively restrict all nuisance[s]… [it] is a matter to be taken up with Congress, not the courts." *Dawson v. Porch.com*, No. 2:20-CV-00604-RSL, 2024 WL 4765159, at *9 (W.D. Wash. Nov. 13, 2024). While the TCPA may be remedial, it's not a blank check. Courts don't get to expand a private right of action simply because a broader reading might favor consumers. Congress could have written § 227(c) to cover all text messages to all phones—it didn't. "While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages. As illustrated above, the FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5)." *Jones*, at *5. As *Jones* made clear, purpose doesn't trump text, and courts are not in the business of rewriting statutes to fix perceived policy gaps.

V.     **CONCLUSION**

For the foregoing reasons, RiseUp respectfully requests this Court to grant its Motion to Dismiss Plaintiff's First Amended Complaint.

7

Dated: August 11, 2025

                                      TROUTMAN AMIN, LLP

                                      */s/ Jenniffer Cabrera*
                                      Jenniffer Cabrera, *pro hac vice*
                                      1825 NW Corporate Blvd, Ste. 100
                                      Boca Raton, Florida 33431
                                      Telephone: 561-834-0883
                                      jenniffer@troutmanamin.com
                                      *Counsel for Defendant RiseUp Financial Group, LLC*

**CERTIFICATION**

Pursuant to E.D. Pa. L.R. 7.1(d), I hereby certify that on August 11, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Jenniffer Cabrera*
Jenniffer Cabrera